# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-0873

WARREN B. COOK, APPELLANT,

V.

ROBERT D. SNYDER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 23, 2016                                    Decided January 31, 2017)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Francis M. Jackson*, of South Portland, Maine, was on the brief, for the appellant.

*Nathan Paul Kirschner*, Appellate Attorney, with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before PIETSCH and BARTLEY, *Judges*, and HAGEL, *Senior Judge*.[1]

BARTLEY, *Judge*: Veteran Warren B. Cook appeals through counsel a February 20, 2015, Board of Veterans' Appeals (Board) decision that denied service connection for a lumbar spine disorder and a total disability evaluation based on individual unemployability (TDIU). Record (R.) at 3-14. Although neither party requested a precedential decision, this case was referred to a panel by a Judge of the Court to determine whether a VA claimant who has had a personal hearing before the Board at one stage of appellate proceedings is barred from receiving a hearing before the Board during a subsequent stage of appellate proceedings, namely, following a remand from this Court. We hold that, under 38 U.S.C. § 7107(b), a claimant is entitled upon request to a Board hearing in

---

[1] Although Judge Hagel was Chief Judge at the time of oral argument, he is now a Senior Judge acting in recall status pursuant to an order by the current Chief Judge. *See* 38 U.S.C. § 7257(b)(1); *In re: Recall of Retired Judge*, U.S. VET. APP. MISC. ORDER 15-16 (Dec. 21, 2016).

such circumstances. Accordingly, we will set aside the February 2015 Board decision and remand the matters for additional development and readjudication consistent with this decision.

## I. FACTS & PROCEDURAL HISTORY

Mr. Cook served on active duty in the U.S. Navy from December 1972 to November 1973. R. at 115. Service medical records (SMRs) indicate that he experienced low back pain in August 1973 and was diagnosed with mild muscle pull. R. at 1760. A few weeks later, he again presented with back pain, which had persisted intermittently since early August. R. at 1761. He denied radicular pain, and mild sprain was again diagnosed. R. at 1761-62. In September 1963, Mr. Cook stated that low back pain had grown worse but his physical examination and x-rays were negative. R. at 1762-63. October 1973 SMRs contain other medical complaints but none relating to low back pain. R. at 1763, 1770-72. His separation examination report showed a normal spine evaluation. R. at 1755-56.

In May 2000, the veteran sought service connection for "disc, laminectomy and discectomy, lumbar spine," which the VA regional office (RO) denied in May 2001. R. at 1407-09. It appears that he did not appeal that decision, and it became final. Mr. Cook sought to reopen the claim in September 2006, but the RO confirmed and continued its denial in March 2007, finding that the evidence submitted was not new and material and, therefore, did not justify reopening. R. at 999-1005. The veteran timely disagreed with that decision, R. at 991, and subsequently testified at a September 2007 RO hearing, in which he stated, inter alia, that he was receiving Social Security Administration (SSA) disability insurance for his back condition. R. at 977-84. The RO continued its denial, and Mr. Cook appealed to the Board. R. at 965-75.

In August 2009, the veteran filed a request for a TDIU. R. at 746-47. After the RO denied entitlement to TDIU in August 2010, R. at 714-19, the veteran timely disagreed, R. at 712, and the RO continued its denial, R. at 695-705, which he appealed to the Board, R. at 693-94.

In June 2012, the veteran testified at a Board hearing regarding back problems and their effect on employment. R. at 655-71. The Board member observed that the issues on appeal were whether new and material evidence had been submitted to reopen the claim of service connection for a lumbar spine disorder and entitlement to TDIU. R. at 656, 668. In October 2012, the Board found that new and material evidence had been submitted to VA and reopened the claim for service

2

connection for a lumbar spine condition. R. at 625-29. It remanded that issue, along with entitlement to TDIU, for additional development, including for VA to obtain worker's compensation, SSA, VA, and private treatment records and to provide VA linkage and TDIU opinions. R. at 629-34. In November 2012, SSA advised VA that it could not provide any medical records because either Mr. Cook did not file for disability benefits or no medical records were obtained in connection with such a claim. R. at 603-04. In April 2013, a VA examiner opined that Mr. Cook's spine disability impacted his ability to work but that it was less likely than not that the condition was related to service. R. at 573-90.

The RO continued to deny service connection for a lumbar spine condition and entitlement to TDIU in a November 2013 Supplemental Statement of the Case (SSOC). R. at 57-67. In a November 2013 letter submitted through his current counsel, the veteran stated that he disagreed with the conclusions reached in the SSOC, wished to continue with his appeal, and "would like to be scheduled for a [Board] video hearing as soon as possible so that he can offer further evidence in the form of testimony." R. at 55. A January 2014 RO letter advised that the appeal was being re-certified to the Board, that relevant records were being transferred there, and that the veteran would "receive further information by separate letter" regarding any request to personally appear before the Board. R. at 47.

In February 2014, the Board issued a decision denying service connection for a lumbar spine disorder and entitlement to TDIU. R. at 33-42. Therein, the Board acknowledged the veteran's request for a hearing to submit additional evidence but denied it because he had already been afforded a Board hearing and, therefore, no further hearing was necessary. R. at 34. Mr. Cook appealed to the Court, which, in October 2014, granted the parties' joint motion for remand; the basis for the remand was the Board's failure to address a positive private linkage opinion. *See* R. at 4-5. In November 2014, the veteran again asked for a travel Board hearing at the RO so that he could "present[] additional evidence in the form of [his] testimony." R. at 17.

In the February 2015 decision on appeal, the Board again denied service connection for a lumbar spine disorder and entitlement to TDIU based thereon, finding that the evidence did not establish a link between the current spine disorder and service or demonstrate continuity of symptoms. R. at 3-14. The Board noted that

3

the [v]eteran requested a hearing in November 2013 so he could present "further evidence." He again requested a hearing in November 2014. "*A* hearing on appeal will be granted if an appellant, or an appellant's representative acting on his or her behalf, expresses a desire to appear in person." 38 C.F.R. § 20.700(a) (emphasis added). The [v]eteran was afforded a Board hearing in June 2012. He also presented testimony before the RO in September 2007. The transcripts have been associated with the record. As the [v]eteran has been afforded a Board hearing, no further hearing is necessary.

R. at 4. This appeal followed.


## II. PARTIES' ARGUMENTS

Mr. Cook argues that the Board erred in denying his requests for a Board hearing following remand.[2] Appellant's Brief (Br.) at 5-10. Specifically, he contends that, because VA benefits are a protected property interest, the Board's denial of a hearing following remand violates his constitutional due process right to be heard at a meaningful time and in a meaningful manner. He further contends that, had he been allowed a subsequent hearing, he would have testified that SSA incorrectly reported that he did not file for disability benefits and that, even if SSA was no longer in possession of the medical records he submitted in connection with such claim, those records should be available via the National Archives; he also argues that he would have provided evidence concerning the existence of such records. *Id.* at 9-10. The Secretary responded that the veteran's due process argument should be rejected because he has not shown that he was prejudiced by the denial of a second hearing before a Board member. Specifically, the Secretary argues that Mr. Cook could have advised the Board at any time in writing via counsel that SSA's response was erroneous but failed to do so. Secretary's Br. at 7-9.

On March 7, 2016, the Court ordered the parties to submit supplemental memoranda of law addressing whether there are bases in regulation or other non-constitutional authority for answering this question. Mr. Cook responds that "[a] review of the applicable VA regulations concerning hearings reveals no express limitation imposed on a veteran's right to a hearing." Appellant's Supplemental Memorandum of Law (Supp. Memo.) at 2. He specifically argues that the indefinite

---

[2] He also argues that the Board erred in relying on an inadequate April 2013 VA opinion to deny service connection for a lumbar spine disability, in denying TDIU following its erroneous denial of service connection for a lumbar spine disability, and in failing to apply the benefit of the doubt.

article "a" in § 20.700(a) does not limit a claimant to one hearing regardless of the number of times the claim is before the Board and that the Board erred in assessing the question under the standard of whether a hearing was "necessary." *Id.* at 6. The language of VA regulations, he asserts, is unambiguous, and the text and structure of the VA regulations clearly entitle him to a post-remand Board hearing.[3] *Id.* at 7-10.

The Secretary responds that neither statute nor regulations entitle a claimant to a Board hearing in this situation. He first states that the indefinite article "a" usually connotes the singular and that both the relevant statute, 38 U.S.C. § 7107(b) ("The Board shall decide any appeal only after affording the appellant an opportunity for a hearing."), and regulations in part 20 of title 38 of the Code of Federal Regulations pertaining to Board hearings use the indefinite article "a." Secretary's Supp. Memo. at 1-6. He further notes that specific regulations permit motions for new hearings only in certain circumstances not implicated here. *Id.* at 6-7. Thus, according to the Secretary, there is no ambiguity in the language of the statute or the relevant regulations. *Id.* at 8-11. Alternatively, the Secretary argues that, even if the pertinent statutory and regulatory language could be considered ambiguous, his interpretation is entitled to deference. *Id.* at 11. Finally, he asserts that the veteran's interpretation of the regulations as requiring the provision of additional Board hearings on request would lead to "absurd results" in that there are currently thousands of requests for Board hearings pending and, even if no new hearings were requested, it is projected to take five years to clear the current backlog of Board hearing requests. *Id.* at 12. Adding additional hearings per claimant to this, the Secretary contends, would intolerably burden the system and violate the general rule that agencies are entitled to discretion in implementing their own procedures. *Id.* at 12-14.

In reply, Mr. Cook argues that the language of the statute and regulations, when read in the context of the VA benefits system as a whole, unambiguously provides for an additional Board hearing in this situation; that the Secretary's interpretation is not claimant friendly; and that, because the Board must decide a case anew following a remand, a claimant should be entitled to the opportunity for a post-remand hearing. Appellant's Reply Supp. Memo. at 1-8.

---

[3] Although the veteran frames the question presented as whether a claimant may have a limitless number of Board hearings upon request, that question is not at issue in this case, where the veteran specifically requested a single Board hearing following a remand from this Court for the purpose of submitting additional evidence. R. at 17.

5

## III. ANALYSIS

### A. Background of Board Hearings

Our starting point is the relevant statute, 38 U.S.C. § 7107(b). Before analyzing section 7107(b), however, it is useful to briefly survey the background of that provision and the history and role of the personal hearing in Board adjudications.

A claimant's right to a personal hearing before the Board has long been guaranteed by VA. At least as early as the World War II era, well prior to judicial review,[4] Board rules provided that, "[a]fter all available evidence in support of an appeal has been submitted to the office of original jurisdiction and the case is certified to the Board . . . , a hearing will be allowed, if desired by the claimant or his representative." RULES OF PRACTICE OF THE BOARD OF VETERANS' APPEALS R. 14 (1941) (attached to Secretary's Supp. Memo., Appendix 2 at 3). This rule was slightly revised and published in the Code of Federal Regulations in 1964, specifying that "[a] hearing on appeal shall be granted where a claimant or his representative expresses a desire to appear in person." 38 C.F.R. § 19.133(a) (1965). At that time, a statute mandated that the Board maintain a hearing docket and that the Board member or members who held the hearing were to make the final decision on the claim, but the statute did not specify an individual right to a personal hearing. *See* 38 U.S.C. § 4002 (1958).

In 1988, Congress amended 38 U.S.C. § 4004(a)–which stated that, "All questions on claims involving benefits under the laws administered by the [VA] shall be subject to one review on appeal to the Administrator. Final decisions on such appeals shall be made by the Board."–by adding the following sentences: "The Board shall decide any such appeal only after affording the claimant an opportunity for a hearing. Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation." VJRA, Pub. L. 100-687, § 203(a), 102 Stat. 4105, 4110-11 (1988). The accompanying Senate Veterans' Affairs Committee report stated that this amendment "would codify a right currently provided by [§ 19.133(a)] to an opportunity for a hearing before the [Board]. In the Committee's view, the right to a hearing is so fundamental to fair proceedings that it should be

---

[4] Judicial review was not available to veterans who were denied benefits at the agency level until Congress passed the Veterans' Judicial Review Act (VJRA) in 1988. *See* Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988).

elevated to the level of a statutory guarantee." S. REP. NO. 100-418, at 34 (1988). After several non-substantive recodifications and redesignations within title 38 of the U.S. Code, the statutory provision came to rest at its current place, 38 U.S.C. § 7107(b). *See* Pub. L. 102-40, § 402(b)(1), 105 Stat. 187, 238-39 (1991) (renumbering § 4004(a) as § 7104(a)); Pub. L. 103-271, § 7(a)(1), (b)(1), 108 Stat. 740, 742-43 (1994) (removing the third sentence from section 7104(a) and inserting it at amended section 7107(b)).

Congress's decision to statutorily codify that right reflected the important procedural nature and the critical role of Board hearings in the VA benefits system. As previously explained:

> The purpose of VA hearings is to permit the claimant to introduce into the record, in person, pertinent evidence and arguments with respect to his [or her] claim, and testimony from the claimant or witnesses under oath or affirmation. Although the Board hears only cases on administrative appeal, it reviews matters de novo and functions as a factfinder in a manner similar to that of a trial court. Unlike a traditional judicial appeal where review is of the record, the opportunity for a personal hearing before the Board is significant because it is the [claimant's] one opportunity to personally address those who will find facts, make credibility determinations, and ultimately render the final Agency decision on his [or her] claim. Our caselaw has acknowledged the importance of a hearing, and the sworn testimony rendered during it, by holding that the Board must consider and provide adequate reasons or bases for its rejection of any sworn testimony.

> The significance placed on a veteran's sworn testimony is further demonstrated by the standard under which the Court reviews the Board's assessment of a witness's credibility. Such credibility determinations are factual findings that the Court reviews under the "clearly erroneous" standard. It is well established that the assessment of the credibility of the veteran's sworn testimony is a function for the [Board] in the first instance and [] it is not for this Court to find . . . that that sworn testimony . . . is credible. One obvious reason the Court defers to the Board's assessment of a witness's credibility is that the Board has had the opportunity to observe the witness firsthand, whereas the Court has not.

*Arneson v. Shinseki*, 24 Vet.App. 379, 382-83 (2011) (citations and most internal quotation marks omitted). Moreover, the personal hearing permits a Board member to ask questions, explore issues then deemed relevant, and clarify witness statements. *See* 38 C.F.R. § 20.700(c) (2016) (providing that all parties to a hearing may ask questions and follow-up questions); *cf. Procopio v. Shinseki*, 26 Vet.App. 76, 79-83 (2012) (finding that a Board member did not conduct an adequate hearing, in part, based on her failure to ask *any* questions).

In addition to providing hearing officers opportunities to make credibility determinations, ask relevant questions, and generally associate otherwise anonymous claims for benefits with individual claimants, personal hearings before the Board can serve as fora in which claimants can receive information necessary for the fair and efficient development of their claims. A Board member conducting a hearing must "'explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position.'" *Bryant v. Shinseki*, 23 Vet.App. 488, 492 (2010) (per curiam) (emphasis omitted) (quoting 38 C.F.R. § 3.103(c)(2)).

Finally, in proposing the statutory right now codified at section 7107(b), the Senate Veterans' Affairs Committee observed a correlation between personal hearings before the Board and successful claims. In fiscal year 1987, 19.5% of the claims heard personally by a Board member in Washington, D.C., were granted, and 30.6% of claims heard by a Board member at a travel hearing were granted. S. REP. 100-418, at 39. The overall Board allowance rate in fiscal year 1987 was 12.8%. *Id.* Although the Senate Committee acknowledged that such statistics were not conclusive, it nevertheless observed that they were "very suggestive that a personal appearance before the Board makes a significant difference in achieving favorable resolution of a claim." *Id.* Indeed, when asked during testimony on this provision why veterans service organizations found it desirable to have Board hearings, then-Board Chairman Kenneth Eaton responded:

> It is always better in any case to have a personal hearing before the people who are deciding. There are exceptions to that; but generally, if you have a good case and you have a witness who is at all credible, you are better off facing those Board members and telling them all about it.

*Id.* at 46.

## B. Standard of Review and Deference

The interpretation of a statute is a question of law that the Court reviews de novo. *Sowers v. McDonald*, 27 Vet.App. 472, 479 (2016); *see Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). "Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure." *Arneson*, 24 Vet.App. at 383 (internal quotation marks omitted). "Statutory terms are interpreted 'in their context and with a view to their place in the overall statutory scheme.'" *Holle v. McDonald*, 28 Vet.App. 112, 116 (2016) (quoting *Tyler v. Cain*,

533 U.S. 656, 662 (2001)); *see also Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 99 (1992) ("We must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law.").

In interpreting section 7107(b), we must apply the general framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Heino v. Shinseki*, 683 F.3d 1372, 1377 (Fed. Cir. 2012). At step one, the Court must determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. In this case, the question at issue is whether, pursuant to section 7107(b), a VA claimant who has received a personal hearing at one stage of appellate proceedings before the Board may receive, upon request, a Board hearing during a subsequent stage of appellate proceedings before the Board, namely, following a remand from this Court. "If the intent of Congress is clear, that is the end of the matter." *Id.* at 842-43. However, if "Congress has not directly addressed the precise question at issue," under step two the Court must determine if the agency's implementing regulation is "based on a permissible construction of the statute." *Id.* at 843. If it is, then we must, as a general rule, give controlling weight to the agency's regulatory interpretation of the statute unless it is arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 843-44; *see Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of VA*, 809 F.3d 1359, 1364 (Fed. Cir. 2016); *Breniser v. Shinseki*, 25 Vet.App. 64, 72 (2011).

Because both parties advance grammatically plausible readings of the sentence, "[t]he Board shall decide any appeal only after affording the appellant an opportunity for a hearing," we cannot say that the statute clearly addresses whether a VA claimant who has had a personal hearing before the Board previously is entitled upon request to a Board hearing following a remand from this Court. The Secretary asserts that the statute's use of the indefinite articles "an" and "a" plainly indicate that only one Board hearing opportunity per claim must be provided, regardless whether the claim is at a different stage in proceedings, such as upon return to the Board following a remand by the Court. Secretary's Supp. Memo. at 10. Mr. Cook, also citing the use of indefinite articles, argues the opposite. Appellant's Supp. Memo. at 3-5.

Notwithstanding the parties' positions, the statute's language is simply not clear on this point. The provision's text does not unambiguously specify that a claimant is limited to one Board hearing irrespective of the number of remands he or she is granted, nor does it unambiguously specify that

9

a claimant is entitled to a Board hearing upon request each time remand is granted. In short, the Court finds section 7107(b) ambiguous with respect to the question at issue.

Because "Congress has not directly addressed the precise question at issue," the next step in the Court's analysis would be to determine whether VA's implementing regulation permissibly construes the statute and, if so, defer to that construction. *Chevron*, 467 U.S. at 843; *Breniser*, 25 Vet.App. at 72. The Secretary urges this deference. He points to his regulation at 38 C.F.R. § 20.700(a)–which states that "[a] hearing on appeal will be granted if an appellant, or an appellant's representative acting on his or her behalf, expresses a desire to appear in person"–and notes that, like the statute, it uses the "singular" indefinite article "a."[5] Secretary's Supp. Memo. at 5, 10. Thus, he contends, he has permissibly construed section 7107(b) as permitting a claimant only one opportunity for a Board hearing. For two related reasons, however, the Court concludes that *Chevron* deference is not warranted here.

First, neither § 20.700(a) nor any other VA regulation resolves the ambiguity in the statute. The premise underlying *Chevron* deference is that, where a statute is ambiguous, "the administering agency has issued a reasonable gap-filling or ambiguity-resolving regulation." *Sears v. Principi*, 349 F.3d 1326, 1332 (Fed. Cir. 2003). But "where the regulation identified by the agency does not speak to the statutory ambiguity at issue, *Chevron* deference is inappropriate." *Lopez v. Terrell*, 654 F.3d 176, 182 (2d Cir. 2011); *accord Ali Saleh Kahlah al-Marri v. Davis*, 714 F.3d 1183, 1188 n.2 (10th Cir. 2013); *see Christensen v. Harris County*, 529 U.S. 576, 587-88 (2000) (concluding that *Chevron* deference was not warranted where the agency regulation did "not address" the dispositive issue in the case); *cf. Mulder v. McDonald*, 805 F.3d 1342, 1345 n.1 (Fed. Cir. 2015) (stating that deference to an agency's interpretation of its own regulation is not due when the regulation "essentially 'parrots' the statutory language" by doing "nothing to interpret or elaborate" it). Here, the regulations cited by the Secretary all contain the same basic ambiguous language that, although not phrased identically to the statute, do nothing to clarify the ambiguity in section 7107(b) as to whether a VA claimant who has had a personal hearing before the Board on an appeal is

---

[5] He also cites the fact that several other provisions in part 20 of title 38 of the Code of Federal Regulations also refer to "a hearing," "a new hearing," or "a personal hearing." Secretary's Supp. Memo. at 5-7.

entitled upon request to another Board hearing following a Court remand. Therefore, the Court is under no obligation to accord deference to the Secretary's interpretation under *Chevron* step two.

Second, and related to the first point, § 20.700(a) was promulgated before section 7107(b) was enacted–indeed, the statute was *enacted to codify the regulatory hearing rights* before the Board. *See supra* Part III.A. *Chevron* deference is appropriate only where Congress has "delegated authority to the agency generally to make rules carrying the force of law, and . . . the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Although Congress has delegated such authority to the Secretary, *see* 38 U.S.C. § 501(a), the Secretary has not used that authority to clarify the ambiguity in section 7107(b). Instead he relies on § 20.700(a), which predates the statute and, thus, cannot possibly have been promulgated to interpret it. *See, e.g.*, *Pub. Citizen, Inc. v. U.S. Dep't of Health & Human Servs.*, 332 F.3d 654, 659 (D.C. Cir. 2003) ("[R]egulations cannot provide a basis for deferring to the [agency's] interpretation of the meaning of the subsequently enacted [statutory] phrase."); *see also Creekstone Farms Premium Beef, LLC v. Dep't of Agric.*, 539 F.3d 492, 499 (D.C. Cir. 2008) (refusing to accord *Chevron* deference to an agency's interpretation of a statute when the "statutory language . . . did not exist when it first adopted its regulation").

Where a court concludes that *Chevron* deference is inapplicable, the court proceeds with the task of statutory interpretation guided by the principles of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1365 (Fed. Cir. 2005); *see also United Techs. Corp. v. United States*, 315 F.3d 1320, 1321-22 (Fed. Cir. 2003) (explaining that, when *Skidmore* deference is warranted, a court engages in statutory interpretation and its "analysis proceeds de novo"); *see also Pub. Citizen, Inc.*, 332 F.3d at 659 (applying *Skidmore* deference to a regulation promulgated before the enactment of the statutory language at issue).

In *Skidmore*, the U.S. Supreme Court explained the proper deference owed under these circumstances:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

11

323 U.S. at 140. *Skidmore* requires adoption of the Secretary's interpretation to the extent that it has the "power to persuade" the Court of its propriety. *Sharp v. Shinseki*, 23 Vet.App. 267, 273 (2009). We conclude that the Secretary's interpretation lacks such power. As explained below, a VA claimant who has had a Board hearing during one stage in the appellate proceedings is not barred from receiving a Board hearing when the claim is at a different stage in the proceedings, namely, following remand from this Court; and the Secretary's arguments to the contrary are not persuasive.

### C. Analysis of Section 7107(b)

Having established that *Skidmore*, rather than *Chevron*, applies, the Court must now determine the meaning of section 7107(b), giving due consideration to the parties' arguments to the extent that they are persuasive. The parties focus their attention on the final phrase of section 7107(b), "an opportunity for a hearing."

"The plain meaning of a term begins with its ordinary, contemporary, common meaning," and "[i]t is commonplace to consult dictionaries to ascertain a term's ordinary meaning." *Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) (internal quotation marks and citations omitted). It is true that the indefinite articles "a" and "an" can mean "[o]ne; some particular." WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1 (2d ed. 1948) [hereinafter WEBSTER'S]; *see, e.g.*, *Sharp v. Shinseki*, 23 Vet.App. 267, 273 (2009) (concluding that "the ordinary, contemporary, common meaning—or plain meaning—of '*a* disability rating' is any single decision rating a veteran's disability" (emphasis added)). But, depending on context, those articles can mean "[a]ny; each; every," as in "*a* man who will do that ought to be arrested." WEBSTER'S at 1; *see, e.g.*, *United States v. Alabama*, 778 F.3d 926, 931-33 (11th Cir. 2015) (discussing the different usage of "a" and "an"). Thus, confining our analysis to the phrase "an opportunity for a hearing" will not resolve this dispute.

As the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) observed in holding that the plain language of the statute authorizing the Secretary to pay to a veteran "a clothing allowance" permitted him to grant a request for a second clothing allowance, "it is impossible to determine the proper boundaries of the Secretary's authority pursuant to [the statute] with reference only to the singular nature of the indefinite article 'a.' Instead, a more thorough consideration of the statutory provision as a whole is required to provide the appropriate context." *Sursely v. Peake*,

551 F.3d 1351, 1356 (Fed. Cir. 2009). The same is true here. *See Holle*, 28 Vet.App. at 116; *Arneson*, 24 Vet.App. at 383.

Reading section 7107(b) as a whole does not eliminate ambiguity either. It states that "[t]he Board shall decide any appeal only after affording the appellant an opportunity for a hearing." The general dictionary definition of "decide" is "to render judgment concerning; to determine." WEBSTER'S at 680. This meaning is likewise reflected in the definition of the noun "decision." *See id.* (defining "decision" as "[a]ct of deciding"; "a determination or result arrived at after consideration, as of a question"; and "conclusion"). The word "any" can mean "[o]ne indifferently out of a number" or "[o]ne or all," and may "sometimes [be] equivalent to the indefinite article." *Id.* at 121. "Appeal" generally connotes "[a] proceeding undertaken to have a decision reconsidered by a higher authority." BLACK'S LAW DICTIONARY 117 (10th ed. 2014); *accord* BLACK'S LAW DICTIONARY 88 (5th ed. 1979) (latest edition at the time the VJRA was enacted in 1988); *see also* WEBSTER'S at 129. As with the use of the indefinite articles, this language is not conclusive as to the provision's meaning, although the phrase as a whole, "decide any appeal only after affording the appellant an opportunity for a hearing," appears to favor the veteran's interpretation in that it suggests that the Board must provide a hearing each or any time an appeal is before it for a decision. What is clear from the language of the statute is that the Board may not render judgment on a claim until it has provided a claimant *at least* one opportunity for a hearing; the language is ambiguous as to whether the Secretary must provide that opportunity more than once, upon request, if a claim is again before the Board for decision, a circumstance that may occur multiple times over the course of appellate proceedings.

To discern the meaning of the language of section 7107(b), the Court must seek guidance in its context and with a view to its place in the statutory scheme. *See Holle*, 28 Vet.App. at 116. As the highest court in the land has observed, the VA adjudicatory process "is designed to function throughout with a high degree of informality and solicitude for the claimant." *Henderson v. Shinseki*, 562 U.S. 428, 431 (2011). We have previously declared that "[t]he entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard *at virtually every step in the process*." *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993) (emphasis added). To aid a claimant in the development of his or her claim, a Board member conducting a hearing must "'explain fully the issues and suggest the submission of evidence

13

which the claimant may have overlooked and which would be of advantage to the claimant's position.'" *Procopio*, 26 Vet.App. at 79-81 (quoting 38 C.F.R. § 3.103(c)(2)); *accord Bryant*, 23 Vet.App. at 492.

When section 7107(b) was enacted, Congress ended the "splendid isolation" in which VA's administrative decisions, unlike those of other Federal agencies, were "insulated from judicial review." *Gardner v. Brown*, 5 F.3d 1456, 4363 (Fed. Cir. 1993). Prior to 1988, a veteran whose claim was rejected by the Board was generally unable to obtain further review. *Henderson*, 562 U.S. at 432. The VJRA established this Court and vested it with the power to "affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate." VJRA, § 301, 102 Stat. at 4113 (now codified at 38 U.S.C. § 7252(a)). The VJRA further authorized the Court to decide relevant questions of law, set aside factual findings that are "clearly erroneous," and compel action by the Secretary that is "unlawfully withheld." *Id.* at 4115 (now codified at 38 U.S.C. § 7261(a)). Implicit in this new judicial review regime was that the Court could set aside Board decisions and remand appeals, more than once if necessary. *See Kutscherousky v. West*, 12 Vet.App. 369, 372 (1999) (per curiam order) (recognizing that "regulations issued prior to the advent of judicial review must be read in light of the availability of judicial review and the caselaw that it produces" (internal quotation marks omitted)).

Given this structure, it is plain that the focus of a claim may change or evolve between an initial Board hearing on the claim and Board consideration of that claim following remand from the Court, which often directs additional development or directs the Board's attention to statutes, regulations, directives, or facts it earlier may have missed. Reading section 7107(b) as barring a claimant who has previously testified at a Board hearing from receiving a Board hearing during a subsequent stage of appellate proceedings–particularly following a remand from this Court–would be neither solicitous of a claimant nor productive of informed Board decisionmaking. Indeed, subsection (b) of § 20.700 states that the purpose of a Board hearing "is to receive argument and testimony relevant and material to the appellate issue." 38 C.F.R. § 20.700(b). Given that the appellate issue may change or evolve as a claim wends its way through the VA claims and appeal process set forth in 38 U.S.C. §§ 5104 and 7105, and the judicial review process set forth in 38 U.S.C. §§ 7252 and 7292, the directive that the purpose of a Board hearing is to receive argument

14

and testimony relevant and material to the appellate issue suggests a liberal interpretation of section 7107(b) that would not limit an appellant to a single hearing over the course of an appeal.

Consider, for example, the facts of this case. When Mr. Cook testified at his June 2012 Board hearing, the issues on appeal were whether new and material evidence had been submitted to reopen the claim of service connection for a lumbar spine disorder and entitlement to TDIU. R. at 656, 668. After that hearing, the Board determined that new and material evidence had been submitted and reopened the lumbar spine disorder claim, but remanded that matter and the matter of entitlement to TDIU for additional development and procurement of medical opinions, without adjudicating the merits of those matters. R. at 625-29 (ordering that VA obtain worker's compensation, SSA, VA, and private treatment records and, thereafter, VA linkage and TDIU opinions). By the time the veteran requested a Board hearing in November 2014, following this Court's October 2014 grant of the parties' joint motion for remand, the issue on appeal had shifted to whether the evidence of record demonstrated service connection for a lumbar spine disability, specifically, whether current back problems were linked to service or to post-service injuries. *See* R. at 12. At the time he requested a second Board hearing, Mr. Cook asserted that he had relevant evidence to offer in support of that issue. R. at 17. Reading the statute as prohibiting a veteran from testifying at a Board hearing where the issue on appeal has changed from one issue with distinct legal criteria to another, *see generally Shade v. Shinseki*, 24 Vet.App. 110 (2010), is counter to the stated purpose of a hearing and inconsistent with "the principles underlying this uniquely pro-claimant system," *Golz v. Shinseki*, 590 F.3d 1317, 1321 (Fed. Cir. 2010).

In the face of the foregoing, the Court is not persuaded by the Secretary's arguments to the contrary. *See Skidmore*, 323 U.S. at 140; *Sharp*, 23 Vet.App. at 273. The Court holds that, taken together, the language of current section 7107(b), its place in the overall statutory and regulatory scheme, the unique nature of the VA adjudication process, and the consequences of the judicial review rubric enacted with the statute compel the conclusion that section 7107(b) is properly interpreted as allowing a VA claimant the right to request and receive a Board hearing for the purpose of submitting additional evidence after a remand from the Court, even if he or she previously received a hearing before the Board at another stage of appellate proceedings.

Although the Secretary cites regulations relating to Board hearings as evidence of his thorough consideration of the issue on appeal, the Court is not persuaded that these regulations

15

support his interpretation of section 7107(b). Section 20.700(a) parrots the statute's ambiguity and must be interpreted the same way as the statute. *See Christensen*, 529 U.S. at 587-88; *Lopez*, 654 F.3d at 182; *see also Mulder*, 805 F.3d at 1345 n.1. The Secretary cites other regulations that specify that a claimant may request—and the Secretary may permit—a replacement hearing where (1) a hearing had not been fully recorded or where transcripts of a hearing are lost or destroyed and the recording is no longer available, *see* 38 C.F.R. § 20.717 (2016); or (2) where, after a hearing before one Board member, a different Board member is assigned to decide an appeal, *see Arneson*, 24 Vet.App. at 385-86 (interpreting 38 C.F.R. § 20.707). But these regulations address a claimant's ability to receive a replacement hearing where the original hearing cannot be relied upon because of equipment failure or misplacement of the transcript or where the original hearing is inadequate because a Board member newly assigned to decide an appeal did not participate in the claimant's hearing. These regulations do not relate to or involve a request for a post-remand hearing after a case returns to the Board. Moreover, as discussed above, § 20.700(b) supports this reading of the statute by acknowledging the need to focus Board hearings on the receipt of evidence and argument that is relevant and material to the appellate issues currently before the Board. In short, none of the regulations contained in part 20 persuade us that the Secretary's interpretation of the statute is due deference under *Skidmore*.

Further, we are not persuaded that the Secretary's currently stated interpretation, that section 7107(b) limits a claimant to only one Board hearing during the entire course of appellate proceedings, reflects his considered and consistent position on the question. *See Skidmore*, 323 U.S. at 140. In *Kutscherousky*, this Court held that claimants are entitled to submit additional arguments and evidence to the Board following remand from the Court. 12 Vet.App. at 372 (citing 38 C.F.R. § 20.1304). This was in response to the Secretary's motion to recall mandate and modify language in the parties' joint motion for remand to reflect that the veteran on remand would be free to submit such argument and evidence. *Id.* at 370. The Court additionally held that a claimant may receive a Board hearing following a Court remand.[6] *Id.* at 372. The Secretary did not appeal or seek

---

[6] Because neither party at the time raised the issue of a post-remand Board hearing, and because discussion of the matter was not necessary to the Court's decision on the issue presented, the portion of the *Kutscherousky* holding addressing this matter is arguably dicta. *See, e.g.*, *Am. Bank and Trust Co. v. Dallas Cty*, 463 U.S. 855, 871 (1983). But, to the Court's knowledge, the Secretary has never registered opposition to the right to a post-remand Board hearing stated in *Kutscherousky*.

reconsideration of the Court's order, which, although based on VA regulations, is entirely consistent with our reading of the statute. Put simply, the fact that the Secretary never took issue with this aspect of *Kutscherousky* belies the persuasive value of his current position.

Also, the Secretary's position does not give adequate consideration to Mr. Cook's assertion that he requested a Board hearing to submit evidence. R. at 17. Under section 7104(a), enacted with section 7107(b), the Board must make a decision "based upon the entire record in the proceeding and upon consideration of all evidence and material of record." 38 U.S.C. § 7104(a). Limiting a claimant to a single Board hearing without regard to the stages of appellate proceedings that have occurred, especially in the face of an assertion that he or she wishes to submit additional evidence in the form of testimony, is not consistent with the solicitous guarantee of claim development evident from the specific sections and overall structure of the VA claims and appeals process. *See generally* 38 U.S.C. § 5103A (regarding VA's duty to assist a claimant in developing evidence). It is for this reason that we cannot conclude that the Board error in this case was harmless. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred."); *Arneson*, 24 Vet.App. at 389 (finding prejudice when error "could have altered the Board's determination[s]"). Mr. Cook repeatedly stated that he wished to present testimony to the Board to provide additional relevant information. Although the Secretary asserts that prejudicial error has not been shown because Mr. Cook could have submitted such information to the Board at any time in writing, Secretary's Br. at 9, we cannot agree. The argument that the opportunity to submit relevant information in writing is equivalent to the opportunity to present it at a Board hearing cannot be squared with the fact that Congress specifically codified Board hearing rights because of the unique benefits of that opportunity. *See supra* Part III.A. In particular, in this case a hearing would have provided Mr. Cook the ability to address and respond to any specific Board member questions relating to the evidence and testimony he was submitting. In these circumstances, the Court is unable to say that the Board's error here was not prejudicial to Mr. Cook.

Having found that the Secretary's arguments do not have persuasive value under *Skidmore*, the Court also observes that this case implicates the presumption announced in *Brown v. Gardner*,

17

513 U.S. 115, 118 (1994), that any doubt in the interpretation of a VA statute must be resolved in favor of a veteran. Applying this presumption in the context of its *Skidmore* analysis, the Federal Circuit has stated that, even where the Secretary's asserted interpretation of a statute is "plausible," adopting an interpretation that is less favorable to the veteran would be appropriate "only if the statutory language unambiguously" required that less favorable interpretation. *Sursely*, 551 F.3d at 1357. Here, the Secretary's interpretation is not required by the language of section 7107(b) and is clearly less favorable to veterans than the interpretation discussed above, namely, that a claimant who received a personal hearing at one stage of appellate proceedings before the Board is entitled, upon request, to a Board hearing following a remand from this Court. *See also Hudgens v. McDonald*, 823 F.3d 630, 639 (Fed. Cir. 2016) (applying *Gardner* and adopting the veteran's interpretation of a regulation as "consistent with the beneficence inherent in the veterans' benefits scheme"); *Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013) (stating that the Secretary's interpretation of a statute is entitled to deference except where, inter alia, his "interpretation is unfavorable to veterans, such that it conflicts with the beneficence underpinning VA's veterans benefits scheme, and a more liberal construction is available that affords a harmonious interplay between provisions").

Last, we address the Secretary's contention that our reading of section 7107(b) leads to absurd results. This argument is not availing. The Court is not adopting the veteran's reading of the statute, that he is entitled to a Board hearing at any time on any issue for any reason, *cf.* Appellant's Supp. Memo. at 4, 7; instead, we hold that a claimant who received a personal hearing at one stage of appellate proceedings before the Board is not barred from requesting and receiving a Board hearing during a separate stage of appellate proceedings before the Board, namely, following a remand from this Court. Although perhaps creating some logistical problems for the Board, our interpretation of 7107(b) does not lead to absurd results. *See Chapman v. Higbee Co.*, 319 F.3d 825, 832 (6th Cir. 2003); *see also Cook v. FDA*, 733 F.3d 1, 9 (D.C. Cir. 2013) (noting that "the doctrine of avoiding absurd results is so rarely applied because" it is so rarely applicable). Moreover, the Court is not convinced that its holding will lead to a wave of requests for additional Board hearings. A claimant will no doubt weigh his or her right to request a Board hearing in the circumstances discussed herein against the delay inherent in obtaining a decision when a hearing is requested. *See, e.g.*, VA Form 9, *Appeal to Board of Veterans' Appeals* (July 2015 version), *available at*

18

http://www.va.gov/vaforms/va/pdf/VA9.pdf (advising that requesting a Board hearing "will add delay to issuance of a Board decision"). Claimants may therefore opt to forgo opportunities for Board hearings in the interest of obtaining more timely Board decisions.

The Court is not indifferent to the administrative burden facing the Board in the provision of personal hearings on matters appealed to it. The most recent statistics cited by the Secretary indicate that the Board faces a sizeable challenge, given current resources, in its mission to offer prompt hearings. But these concerns do not authorize the Court to ignore the intent of Congress, discerned from the language of section 7107(b), the text and context of related statutory and regulatory provisions, the overall structure of the VJRA, and the solicitous and pro-claimant principles informing veterans benefits law. If the Secretary disagrees with this interpretation of section 7107(b), he is free, following public notice and comment, to promulgate a regulation that resolves the ambiguity in the statute. *See* 5 U.S.C. § 552. Under the *Skidmore* deference we accord in the present case, however, we are simply not persuaded by his arguments.

In sum, we hold that, under section 7107(b), a claimant who received a personal hearing before the Board at an earlier stage of appellate proceedings is entitled to receive, upon request, a Board hearing following this Court's remand of the same claim. Because the Board erred as a matter of law in concluding that Mr. Cook did not have such a right, the Court will set aside the Board decision and remand the matter for the Board to provide him with an opportunity for such a hearing. *See Gantt v. Principi*, 16 Vet.App. 89, 96 (2002); *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law").

Given this disposition, the Court need not address the veteran's other arguments that would not result in a remedy greater than remand. Mr. Cook is free on remand to present to the Board any additional arguments and evidence in accordance with *Kutscherousky*, 12 Vet.App. at 372-73. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

After consideration of the parties' briefs and oral arguments, the record on appeal, and the governing law, the February 20, 2015, Board decision is SET ASIDE, and the matters are REMANDED for additional development and readjudication consistent with this decision.