﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/19 Archive Date: 09/27/19

DOCKET NO. 190129-7495
DATE: September 30, 2019

ORDER

Service connection for bilateral hearing loss is denied.

Service connection for obstructive sleep apnea as secondary to posttraumatic stress disorder (PTSD) is granted.

Service connection for keloid scars of right arm, left ear, and chest (also claimed as residual scrapes) is denied.

A rating in excess of 10 percent for tinnitus is denied.

FINDINGS OF FACT

1. The Veteran does not have a right ear hearing loss disability; his left ear hearing loss disability did not manifest in service or to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established loss; and bilateral hearing loss disability is not otherwise etiologically related to in-service disease or injury, including noise exposure.

2. The Veteran’s obstructive sleep apnea was caused by his service-connected PTSD.

3. The preponderance of the evidence is against finding that keloid scars of right arm, left ear, and chest began during active service, or is otherwise related to an in-service injury or disease, to include residuals from reported in-service scrape injury.

4. The Veteran’s tinnitus is assigned a single 10 percent rating, which is the maximum evaluation authorized under Diagnostic Code 6260.

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110; 38 C.F.R. § 3.102, 3.303, 3.307, 3.309, 3.385.

2. The criteria for service connection for obstructive sleep apnea as secondary to posttraumatic stress disorder are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310.

3. The criteria for service connection for keloid scars of right arm, left ear, and chest are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. There is no legal basis for the assignment of a schedular rating in excess of 10 percent for tinnitus. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.87, Diagnostic Code 6260.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decisions on appeal were issued in March 2014 and March 2017. In May 2018, the Veteran elected the modernized review system and elected Higher Level Review. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

In August 2018, VA issued a RAMP rating decision that denied the issues on appeal. The Veteran filed a January 2019 VA Form 21-4138 and selected ‘evidence submission’ as his RAMP Selection.

The Veteran served on active duty during the Vietnam War Era from January 1984 to January 1988 in the United States Navy.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

Certain chronic diseases, including bilateral hearing loss will be presumed related to service, absent an intercurrent cause, if they were shown as chronic in service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if they were noted in service (or within an applicable presumptive period) with continuity of symptomatology since service that is attributable to the chronic disease. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. § § 3.303, 3.307, 3.309. Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013).

1. Service connection for bilateral hearing loss.

The Veteran contends that his bilateral hearing loss is related to service. In March 2017, he submitted a Notice of Disagreement and noted that he was exposed to loud engine noise from “jets and catapult system on the aircraft carrier” that affected his hearing. He notes that he hears a “fluttering” sound in his ears constantly.

The question for the Board is whether the Veteran has a current bilateral hearing loss disability; and if so, whether any hearing loss disability is etiologically related to service to include as a result of conceded acoustic trauma due to jet aircraft.

Recent audiology testing conducted in February 2017 reveals that the Veteran manifests with normal hearing in the right ear and a sensorineural hearing loss in the left ear (in the frequency range of 500-4000 Hz) as per 38 C.F.R. § 3.385. Additionally, the Veteran served aboard the U.S.S. Saratoga CV60 (aircraft carrier) and VA has conceded noise exposure during military service.

However, the Board concludes that the preponderance of the evidence is against service connection for bilateral hearing loss disability. First, the Veteran does not manifest with a right ear hearing loss disability. Without a current right ear hearing loss disability, the Veteran is not entitled to service connection. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Regarding left ear hearing loss, the evidence does not tend to show that hearing loss disability has its onset in service or within the presumptive period following service discharge; or that the disability is otherwise related to service, to include noise exposure. 38 C.F.R. § § 3.307, 3.303(b); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Here, service treatment records include audiology findings from his October 1987 separation examinations. The findings do not reflect a hearing loss disability for VA purposes on examination. The Board notes that there was a (post-separation) January 2014 VA audiology examination revealed normal hearing bilaterally as per 38 C.F.R. § 3.385.

Hearing loss is first shown in 2017, roughly 30 years after discharge from active service. The first documented complaints and findings for hearing loss are in February 2017 on VA audiology examination, which disclosed left ear sensorineural hearing loss in the frequency of 500-4000 Hz (and normal right ear hearing). The examiner opined that it was less likely than not that the Veteran’s left ear hearing loss was etiologically related to service and provided rationale for this opinion.

While the Veteran is competent to report his symptoms and believes his hearing loss is related to service, this evidence does not establish that the Veteran had a hearing loss in service or to a compensable degree in the initial post separation year because hearing loss disability for VA purposes required medial testing in accordance VA law.

Also, although the Veteran states that he believes his hearing disability was caused by his in-service noise exposure, the Board finds that the Veteran is not competent to formulate an opinion on the etiology of his hearing loss. The etiology of delayed onset hearing loss is not susceptible to lay observation and is a complex medical matter that requires an understanding of the anatomy of the ear, hearing mechanisms, and disease processes. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4.

The more persuasive evidence of record tends to show that he did not have a hearing loss disability in service or to a compensable degree within the initial post separation year, or that any currently shown hearing loss disability is etiologically related to service, including left ear findings therein. The Board notes that, when evaluating hearing loss, impairment must be shown to a compensable degree within the presumptive period and comply with the testing requirements set under 38 C.F.R. § 4.85, which is not shown here.

The Board assigns greater probative value to the normal findings on service separation in October 1987 coupled with the many years intervening service and the first documented complaints and findings for hearing loss along with the negative VA medical opinion. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the claimant). The VA medical opinion is more probative than the Veteran’s uncorroborated belief as it was based on review of the record including the medical history as provided by the Veteran. Also, the conclusion is supported by a rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).) (stating that most of the probative value of a medical opinion comes from its reasoning).

On balance, the weight of the evidence is against the claim.

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107 (b)

2. Service connection for obstructive sleep apnea as secondary to posttraumatic stress disorder.

The Veteran contends that sleep apnea developed as a result of his service. Alternatively, he contends that his sleep apnea is proximately due to and/or aggravated beyond its natural progression by his service connected PTSD.

The Veteran’s representative submitted argument and medical evidence supporting the Veteran’s claim. See February 2019 Third Party Correspondence. She argues that, affording the Veteran the benefit of doubt, the medical evidence of record supports that his sleep apnea developed as proximately due to and/or aggravated beyond its natural progression by his service connected PTSD.

A December 2015 sleep study revealed the Veteran has a diagnosis of obstructive sleep apnea. The Veteran’s VA treatment records note obstructive sleep apnea on his problems list.

Upon review of the record, the Board finds the evidence to at least be in equipoise as to whether the Veteran’s current sleep apnea is proximately due to and/or aggravated beyond its natural progression by his service-connected PTSD. The Board finds that both the March 2017 VA opinion and June 2017 and November 2018 Private opinions are probative as they addressed clinical findings associated with sleep apnea; however, it finds that the rationale of the Private clinician more accurately describes the Veteran’s clinical profile indicating an etiology and aggravation of sleep apnea due to PTSD. The Board finds that the evidence is at least in equipoise that his obstructive sleep apnea is proximately due to and aggravated beyond its natural progression due to service connected PTSD.

Accordingly, after resolving all doubt in favor of the Veteran, the Board finds that service connection for obstructive sleep apnea is warranted. 38 U.S.C. § 5107; 38 C.F.R. § § 3.102.”

3. Service connection for keloid scars of right arm, left ear, and chest (also claimed as residual scrapes).

The Veteran contends that his keloid scars on his right arm, left ear, and chest are related to service. See February 2014 VA Skin Diseases Examination. He reported that he has residual scrapes that resulted from injury in service; however, he did not report for treatment because he felt they were minor.

The Veteran submitted an April 2014 Buddy Statement from a fellow service-member who noted that he witnessed the Veteran had skin problems during service manifesting as “big bumps on his skin.”

The question for the Board is whether the Veteran has a current keloid scar disability of the right arm, left ear, and chest disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

Initially, the Board notes that the Veteran’s January 1984 entrance exam indicated a scar on the left knee. There was no diagnosis of a keloid scar on the right arm, left ear, or chest on entrance examination or October 1987 separation examination.

The Board concludes that, while the Veteran has a current diagnosis of keloid scars, and evidence shows that he manifested with in-service acute skin conditions, including varicella and pruritis in service, the preponderance of the evidence weighs against finding that the Veteran’s diagnosis of keloid scars of the right arm, left ear, and chest began during service or is otherwise related to an in-service injury, event, or disease. Further, the Board notes that while the Veteran reported that he did not believe his scars were serious enough to report, his service treatment records reveal numerous encounters for treatment of skin problems where keloid scars were not found upon examination.

VA treatment records show the Veteran was not diagnosed with keloid scars until 2004, years after his separation from service. While the Veteran is competent to report having experienced problems with his skin during service, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of a keloid scar disability. The issue is medically complex, as it requires knowledge of dermatological diseases of the skin and the ability to provide differential diagnoses for different manifestations of skin disease (e.g. varicella, pruritis, erythema, etc.). Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Further, the January 2014 VA examiner opined that the Veteran’s keloid scars of the right arm, left ear, and chest is not at least as likely as not related to an in-service injury, event, or disease, including residual scrapes from service. The rationale was although the Veteran presented with treatment for skin diseases during service, including varicella, pruritis, erythema, these skin conditions were acute and resolved prior to separation. The examiner noted the Veteran’s medical history and pointed to the Veteran’s October 1987 separation examination which was unremarkable for skin disease where the Veteran reported “I am in good health.” The examiner noted the first encounter for keloid scars was in 2004 with excisions performed as treatment due to recurrent keloids.

The examiner’s opinion is probative, because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. The examiner recognized that the Veteran presented for treatment of skin problems during service; however, his service treatment records indicated that the course of the conditions were acute and resolved prior to separation and were not related to the Veteran’s current keloid scars of the right arm, left ear, and chest. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

On balance, the weight of the evidence is against the claim.

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107 (b)

4. Increased rating in excess of 10 percent for tinnitus.

Increased Rating

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Any reasonable doubt regarding a degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran seeks higher ratings for his service-connected tinnitus disability. He has not set out any specific contentions as to why he believes a higher rating is warranted.

The Veteran’s tinnitus is currently rated under 38 C.F.R. § 4.87, Diagnostic Code 6260, with a 10 percent rating beginning July 2013.

Diagnostic Code 6260 pertains to recurrent tinnitus and provides for only one rating: 10 percent, whether the sound is perceived in one ear, both ears, or in the head. 38 C.F.R. § 4.87, Diagnostic Code 6260; Smith v. Nicholson, 451 F.3d 1344 (Fed. Cir. 2006); See also Doucette v. Shulkin, 28 Vet. App. 336 (2017) (holding that “when a claimant’s hearing loss results in an inability to hear or understand speech or to hear other sounds in various contexts, those effects are contemplated by the schedular rating criteria”).

The Veteran’s tinnitus has been assigned this rating throughout the period on appeal. As the Veteran’s tinnitus has been assigned the maximum schedular rating throughout the period on appeal, there is no legal basis to award a higher schedular evaluation. As such, entitlement to a rating for tinnitus in excess of 10 percent is not warranted on a schedular basis. Accordingly, the appeal is denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426 (1994). 

 

Nathaniel J. Doan

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. A. Macek, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § § 20.1303.