Citation Nr: 1749184 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 11-14 947A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUE

Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).


REPRESENTATION

Appellant represented by: Betty L.G. Jones, Agent


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

T. Wishard, Counsel


INTRODUCTION

The Veteran had active military service from June 1969 to April 1971.

This matter comes before the Board of Veterans' Appeals (Board) from a June and November 2010 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO) in Milwaukee, Wisconsin. 

In January 2015, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record. 

This matter was previously before the Board in June 2015 and in September 2016 when it was remanded for further development. It has now returned to the Board for further appellate consideration. The Board finds that there has been substantial compliance with its remand.

As noted in its June 2015 Board remand, the issue of a TDIU was raised by the Veteran's claims for increased ratings for the following disabilities: headache, bilateral hearing loss, left eye, right knee, and tinnitus. Rice v. Shinseki, 22 Vet. App. 447, 453 (2009).

In January 2017, the Veteran filed a VA Form 9 (substantive appeal) and requested a Board hearing on the issue of entitlement to a TDIU. As the Veteran's claim for a TDIU was already on appeal as part of his increased rating claims, and as he already had a Board hearing on those issues which included his contention as to unemployabiilty, another hearing is not warranted. The Board has considered the U.S. Court of Appeals for Veteran's Claims decision in Cook v. Snyder, 28 Vet. App. 330 (2017), in which the Court addressed the meaning of 38 U.S.C. § 7107(b), but finds that it is not dispositive in this case. In Cook, the Court's finding that the veteran was entitled to a second Board hearing was specific to a situation wherein the veteran sought an additional hearing following an earlier remand from the Court. The Court was careful to include language in its holding that it was not finding that a veteran is entitled to an additional Board hearing at any time on any issue of any reason. In the present case, the Veteran's claim has not been remanded by the Court, but by the Board. In addition, the Veteran was represented by the same agent at the 2015 Board hearing as he is now. The Board finds that another hearing is not warranted. 


FINDINGS OF FACT

The Veteran's service-connected headache, bilateral hearing loss, left eye, right knee, and tinnitus disabilities, are not so severe as to prevent him from obtaining and maintaining substantially gainful employment consistent with his level of education and occupational experience. 


CONCLUSION OF LAW

The criteria for entitlement to a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.124a Diagnostic Code (DC) 8100, 4.85 DC 6100, 4.71a DCs 5256-5263 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Legal Criteria

Total disability ratings for compensation may be assigned where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of a service-connected disabilities: Provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16 (a). Substantially gainful employment is defined as work which is more than marginal and which permits the individual to earn a living wage. Moore v. Derwinski, 1 Vet. App. 356 (1991).

To establish a total disability rating based on individual unemployability, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. In reaching such a determination, the central inquiry is whether the Veteran's service connected disabilities alone are of sufficient severity to produce unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training and previous work experience, but not to his age or any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation; provided that permanent total disability shall be taken to exist when the impairment is reasonably certain to continue throughout the life of the disabled person. 38 C.F.R. § 4.15.

It is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16 (b). Rating boards should refer to the Director of the Compensation and Pension Service for extra-schedular consideration all cases of Veterans who are unemployable by reason of service-connected disabilities but who fail to meet the percentage requirements set forth in 38 C.F.R. § 4.16 (a). The Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16 (b). 

Analysis

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim.

The issue of entitlement to a TDIU was raised as part of the Veteran's claims for increased ratings for his headache disability, bilateral hearing loss disability, left eye disability, right knee disabilities, and tinnitus. Rice v. Shinseki, 22 Vet. App. 447 (2009). 

The evidence reflects that the Veteran has a Bachelor's degree in institutional management from a major university, two Associate's degrees, and has past employment experience as an employee specialist, as a journeyman carpenter for more than two decades, and from approximately 2007 to 2014 as a records management technician in support services in the Federal government.

Vocational Rehabilitation records reflects that in August 2011, the Veteran reported that he had worked as a claims assistant for the past four years but that "[h]e does not like his job" and that "it does not aggravate his [service-connected disabilities]. 

July 2014 correspondence from Bones and Jones Physicians (Dr. J. T.) reflects in pertinent part, as follows:

[The Veteran] is currently under my care. He most recently underwent repair for a tear of his right distal biceps in March 2014. He is recovering but will have restrictions regarding lifting and use of the wrist. In addition, he has had significant pain through his left wrist which showed evidence of chronic tearing of his scapholunate ligament with degenerative cystic change noted through the carpal bones that he has limited ability to do forceful gripping or repetitive activities with the left wrist. He has also been treated for his right knee in the past. He has known degenerative arthritis which has required periodic corticosteroid injections. His right knee would limit any prolonged standing, walking, stairs or kneeling type activities. He has also had carpal tunnel surgery for his wrists in the past. 

The Veteran is not in receipt of service connection for an upper extremity disability.

Social Security Administration (SSA) records reflect that an RFC (Residual Functional Capacity) dated in December 2014 indicates that the Veteran is capable of sedentary work with postural limitations restricted to occasional. The SSA found that the Veteran was disabled because he cannot perform any of his past relevant work because his unskilled past experiences are not transferable to jobs which have demands within his capacity. The Veteran's RFC reflects that he can lift and/or carry 20 pounds occasional and 10 pounds frequently, stand and/or walk two hours, sit for approximately six hours in an eight hour workday. These limitations were based on his service-connected right lower extremity, and nonservice-connected left upper extremity. The SSA records also reflect that the Veteran had trouble lifting and holding objects without pain; however, he is able to wash dishes, do limited laundry, do surface cleaning, and do shopping for groceries. The SSA records reflect that the heaviest which the Veteran lifted at work is 20 pounds and he frequently lifted 10 pounds. 

The Veteran reported that he cannot read very long or he gets headaches, that he cannot walk more than 100 yards due to his right knee, that left hand strength is almost gone, and that he has CTS in addition to his service-connected disabilities. Records also note severe gout, and generalized anxiety disorder for which he is not in receipt of service connection.

A November 2014 Chicago Consulting Physicians records (Dr. R. R.K.) reflects that upon examination, the Veteran had an abnormal gait and tenderness over the right knee, but did not have restriction of range of motion of any of his joints.

When applying for SSA benefits, the Veteran listed the following conditions as his reasons for stopping employment (right knee, bilateral CTS, depression disorders/PTSD, defective vision, bilateral hearing loss, headaches, left hand problems, tinnitus). Thus, he listed both service-connected and nonservice-connected disabilities.

A November 2014 Chicago Consulting Physicians record (Dr. R.P.) reflects that the Veteran reported that he last worked as a claims representative and then as a support person for seven years until January 2014 when he left because he "turned 63 and had too many pains." He reported that at home, he does laundry, chores around the house, cleans up after four dogs and three people, and cooks.

The Board has considered all the pertinent evidence of record, to include the VA and private clinical records, to include the lay statement. The Board finds, based on the record as a whole that a TDIU is not warranted. 

With regard to the Veteran's headache disability, the most probative evidence of record is against a finding that the Veteran has a headache disability of such severity as to cause substantial interference with employment when considered alone or with his other service-connected disabilities. The records reflect that the Veteran reported headaches every day at the end of the workday (October 2009), headaches "pretty much nightly" (January 2010), headaches triggered by stress and by eye strain or prolonged reading which were described as throbbing in nature, generally moderate to severe in severity, and responded to Motrin and rest (May 2010), headaches which only occur after reading (which he does "a lot" at work) and which resolve after he discontinues reading and relaxes at home (January 2011), headaches which are incapacitating/prostrating once per month (November 2012), and almost daily headaches with no prostrating attacks and which were mild in severity (April 2014). At the January 2015 Board video conference hearing the Veteran testified that he has headaches almost every day. He stated that the headaches are probably connected to the eye injury, reading too much, and not enough sleep. He reported that he takes aspirin, ibuprofen and Tramadol (prescribed for pain), and that if he gets enough sleep or does not read a lot the headaches are "not too bad". The above is probative evidence that the Veteran's headaches do not preclude substantial gainful employment. By the Veteran's own account, he was able to work until the end of the workday, and only had one prostrating headache per month. There is no probative evidence that even if the Veteran shortened his work day slightly to avoid a headache at the end, that such would no longer be substantial gainful employment, even when considering his other service-connected disabilities as well. 

A January 2016 VA examination report reflects that the Veteran reported no recent episodes of prostrating attacks, and that his tension headaches symptoms have significantly improved since he is no longer required to sit and look at computer screens and look at catalogues for his job. The clinician stated that "[b]ased on history, physical examination, and review of available medical records, the veteran has a headache condition of mild severity." The Board acknowledges that the Veteran's headaches were mild and had shown significant improvement when the Veteran was no longer employed; nevertheless, the fact remains that the evidence does not support a finding that the Veteran could not perform substantial gainful employment consistent with his skill provided that he were given rests or breaks during the day, or his work day was decreased somewhat. 

With regard to the Veteran's bilateral hearing loss disability, the most probative evidence of record is against a finding that the Veteran's disability is of such severity as to cause substantial interference with employment when considered alone or with his other service-connected disabilities.

The Veteran underwent VA examinations in October 2009, October 2010, November 2012, and November 2014. The reports reflect that the Veteran reported that he has to concentrate harder on conversation due to his hearing disability and that he has difficulty hearing it the presence of competent noise, and difficulty understanding speech. He was noted to use hearing aids (amplifications). The Veteran's work history has not been shown to include the need for extensive verbal communication as an integral component. Thus, the evidence does not support a finding that his bilateral hearing loss disability precludes substantial gainful employment. 

With regard to the Veteran's left eye disability, the most probative evidence of record is against a finding that the Veteran's disability is of such severity as to cause substantial interference with employment when considered alone or with his other service-connected disabilities. An October 2009 VA eye examination, the Veteran denied a history of diplopia, glaucoma, or other diseases of the eye. The best corrected distance visual acuity was 20/200 in the left eye; the best corrected near visual acuity was 20/400 in the left eye. The examiner found that since the Veteran's left eye cannot focus well and sees a blurry image, it is likely causing eye strain in the periocular region and causing headaches. His best corrected visual acuity of the left eye was to 20/200 at distance and 20/400 at near. 

A February 2010 VA optometry consult report shows visual acuity of 20/200 in the left eye. In a May 2011 addendum the Veteran's best corrected distance visual acuity in the left eye was 20/200 and near was 20/400. 

On November 2012 VA eye examination, the Veteran reported that he feels like his vision is decreasing for reading, and both eyes are tearing. On examination, corrected near and distance visual acuity was 10/200 in the left eye. His vision was not limited to no more than light perception only, and he was able to recognize test letters at one foot or closer. He was able to perceive objects, hand movements, or count fingers at 3 feet. The functional impact was that the Veteran may experience eyestrain after prolonged near work secondary to vision of the left eye being significantly blurrier than the right eye.

On April 2014 VA eye conditions examination, it was noted that there were no new problems and the Veteran's vision was stable. On physical examination visual acuity corrected near and distance visual acuity was 20/200 in the left eye. He has had no incapacitating episodes attributable to the service-connected left eye disability. It was noted that his left eye disability impacts his ability to work in that he is essentially monocular given decreased visual acuity in the left eye and therefore has decreased depth perception. 

A March 2016 VA examination report reflects that the Veteran's corrected left vision was 10/200 and his corrected near vision was 20/200. With regard to his ability to work, the examiner found that the Veteran was essentially "monocular and has monocular limitations". The Veteran's right eye vision was corrected to 20/40 or better in the both distance and near. 

While the Veteran's left eye disability caused limitations, he still returned 20/40 in the right eye; thus, he retained eyesight and his left eye's lack of vision does not preclude him from substantial gainful employment. 

With regard to the Veteran's right knee disability, the most probative evidence of record is against a finding that the Veteran's disability is of such severity as to cause substantial interference with employment when considered alone or with his other service-connected disabilities. A November 2012 VA examination report reflects that the Veteran reported having flare-ups, which consisted of him having increased stiffness and pain in the right knee about once a month. Range of motion testing of the right knee showed flexion to 90 degrees (painful motion at 75 degrees), extension to 0 degree with no objective evidence of painful motion. On repetitive testing flexion was to 80 degrees, and extension was to 0 degree. There was tenderness or pain to palpation for joint line or soft tissues of the right knee. Muscle strength was 5/5. Joint stability tests were normal. His right knee disability impacted his ability to climb, jump, run, and stand for greater than one hour. 

On April 2014 VA examination, the Veteran did not report having any flare-ups that impact the function of his right knee. Range of motion testing of the right knee showed flexion to 120 degrees (painful motion at 120 degrees), extension to 0 degree with no objective evidence of painful motion. On repetitive testing flexion was to 120 degrees, and extension was to 0 degree. There was no functional loss or impairment or additional limitation in range of motion of the knee. There was on pain on palpation. Muscle strength was 4/5. Joint stability tests showed some abnormality (medial-lateral instability, 3+). He had a meniscus (semilunar cartilage) condition manifested by right meniscal tear and frequent episodes of joint pain on the right. His right knee disability impacted his ability to perform any physical work. He used assistive devices, a brace occasional and a cane regularly. 

A January/February 2016 VA examination report reflects that the Veteran reported that he currently does walking with a right knee support brace at a health club for exercise (approximately 2 miles per hour for approximately one hour every other day and then he has to apply ice to his right knee). The Veteran described intermittent episodes of pain and says it feels like his right knee is buckling. The Veteran was able to independently rise to a sitting to a standing position without assistance, displayed a normal reciprocal gait pattern, and distributed his weight evenly on each leg while walking without an assistive device. He had mild difficulty with toe walking and moderate difficulty with heel walking with reports of knee pain. He displayed an ability to go into a half squatting position with reports of right knee pain, and range of motion from 0 to 120 degrees with pain at end of the flexion. The Veteran reported feeling like his knee buckled, but there were no signs of knee joint instability noted on Lachman's examination or McMurray's examination. He had approximately 10-15 mm of gapping with no firm endpoint noted at the medial compartment and especially at the lateral compartment of the right knee with application of varus stress and valgus stress to the knee joint. His sensory motor and reflex examinations were normal. The examiner opined that the Veteran could have problems in occupational settings that require prolonged standing, prolonged walking, heavy lifting with squatting, and climbing at unprotected heights; the Veteran is able to tolerate work that falls in the sedentary to light duty ranges of physical demand.

Thus, the evidence does not support a finding that his right knee disability precludes substantial gainful employment given his prior work experience, which includes sedentary work and would allow the Veteran to sit down rather than walk extensively. 

Finally, with regard to the Veteran's tinnitus, it has not been shown by competent credible evidence, or alleged, that it precludes substantial gainful employment. The Veteran reported that he only notices it in quiet environments, and he can mask it with another sound (See November 2014 VA examination report).

The Board finds that while the Veteran's service-connected disabilities on appeal, either singly or in combination, may impair his employment, they would not preclude substantial gainful employment in a sedentary occupation which allows him to take periodic breaks from a computer screen and/or reading. In addition, the Veteran's right knee does not preclude all walking, as evidenced by the fact that he can, and does, use a treadmill, and retains substantial range of motion. While one eye lacks significant vision, he still retains significant vision in his other eye. His hearing loss is assisted with hearing aids and his past employment has not shown to require significant verbal communication. His headaches do not occur until approximately six or more hours of work (i.e. the end of the work day) and are alleviated with rest. Finally, his tinnitus has been able to be masked with noise.

The Veteran's ratings are recognition that the impairment may make it difficult to obtain and keep employment. In making a determination as to whether a TDIU is warranted, the Board has considered the actual functional limitations and/or symptoms caused by the Veteran's service-connected disabilities and how such limitations may relate to employment given the Veteran's educational and occupational history. 

The evidence does not reflect that an employer cannot make reasonable accommodations (e.g. breaks to allow him to rest his eyes or walk for a few minutes) for the Veteran. The Americans with Disabilities Act (A.D.A.) mandates reasonable accommodations for employees with substantial disabilities so long as the employee can satisfactorily perform the work once those accommodations are made. See 42 U.S.C. Chapter 126. 

The preponderance of the evidence is against the Veteran's headache, bilateral hearing loss, left eye, right knee, and tinnitus disabilities are of such severity as to preclude his participation in substantially gainful employment at any time during the appeal, on either a schedular or extraschedular basis. 

The Board has considered the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); Gilbert . v. Derwinski, 1 Vet. App. 49 (1990) 


ORDER

Entitlement to a total disability rating based on individual unemployability (TDIU) is denied. 




____________________________________________
M.C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs