# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-1428

JESUS G. ATILANO, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 10, 2019                                                    Decided July 3, 2019)

*Sean A. Ravin*, of Coral Gables, Florida, and *Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Lindsay J. Gower*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Selket N. Cottle*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, MEREDITH, and TOTH, *Judges*.

TOTH, *Judge*: Veteran Jesus G. Atilano requested an in-person hearing before the Board in connection with his appeal. He failed to appear at the appointed time, but his attorney, accompanied by an expert witness, was present and asked to proceed with the hearing. The Board member adjourned and attempted to reschedule the hearing so that the veteran could take part. Mr. Atilano responded through counsel that, although he wished to have his expert witness testify, he did not wish to participate. No hearing subsequently took place. In an April 2017 decision, the Board, relying on pertinent regulations, concluded that the veteran's hearing request in these circumstances must be treated as withdrawn and proceeded to adjudicate the claims on the merits.

On appeal, Mr. Atilano argues that the Board's conclusion was contrary to the plain meaning of relevant statutory and regulatory provisions. We disagree. The Board's reasoning aligns with the plain meaning of the statute and, even if we were to find the statute silent or ambiguous, the Secretary's regulation supports the Board's findings and is a reasonable construction of the statute. We therefore affirm.

# I. BACKGROUND

## A.

Until 1988, the opportunity for a Board hearing was guaranteed through regulation alone. *See Cook v. Snyder*, 28 Vet.App. 330, 336 (2017) (*Cook I*), *aff'd sub nom. Cook v. Wilkie*, 908 F.3d 813 (Fed. Cir. 2018) (*Cook II*). In that year, Congress first codified the right in statute. "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing." 38 U.S.C. § 7107(b). Congress has further specified that an "appellant will be accorded hearing and representation rights pursuant to the provisions of [chapter 71 of title 38] and regulations of the Secretary." 38 U.S.C. § 7105(a).

Notwithstanding the reference to chapter 71, statutory directives governing a Board hearing in this case are confined to section 7107.[1] Congress has mandated that a hearing docket be maintained and that a Board member conducting a hearing participate in the final decision of the claim. 38 U.S.C. § 7107(c). As part of its logistical management, the Board is generally obliged to schedule a hearing "for the earliest possible date." § 7107(d)(1)(A)(i), (B)(iii). But the Board may advance a case on its hearing docket for cause, such as when "the appellant is seriously ill or is under severe financial hardship." § 7107(d)(3)(B).

The Board must determine "whether a hearing before the Board will be held at its principal location or at a facility of the Department or other appropriate Federal facility located within the area served by a regional office of the Department." § 7107(d)(1)(A)(i). It must also determine whether to provide a hearing in which "the appellant personally appear[s] before a Board member" or "participate[s]" "through voice transmission or through picture and voice transmission, by electronic or other means." § 7107(d)(1)(A)(ii), (e)(1). On being notified of the Board's determinations, "the appellant may request a different location or type of hearing," and that request "shall" be granted. § 7107(d)(1)(B)(ii)-(iii). Importantly, a "hearing provided through the use of the facilities and equipment described" above "shall be conducted in the same manner as, and shall

---

[1] We say "in this case" because, in 2017, Congress made several changes to the overall VA appeals process—including some changes to the Board hearing regime; VA promulgated revised regulations as well. *See generally* Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017); VA Claims and Appeals Modernization, 84 Fed. Reg. 138 (Jan. 18, 2019) (final rule). The new provisions took effect on February 19, 2019. § 2(x), 131 Stat. at 1115; 84 Fed. Reg. at 138. But these statutory and regulatory changes apply only to claims in which an initial decision is issued after the February 19, 2019, effective date, unless a "legacy" claimant elects to use the modernized review system. 84 Fed. Reg. at 177. There is no assertion that the new rules should apply here, so we confine our analysis to the law in effect at the time of the Board's April 2017 decision.

be considered the equivalent of, a personal hearing." § 7107(e)(2). These provisions set out the three basic forms that Board hearings can take: a "face-to-face" hearing at a VA facility (commonly known as a "travel Board" hearing); an "in-person" hearing at the Board's central office in Washington, D.C.; or a "video teleconference" between the central office and a VA facility. REPORT OF THE CHAIRMAN, BOARD OF VETERANS' APPEALS, FISCAL YEAR 2018, at 9 (2019).

Aside from this one statutory section, Board hearings are governed wholly by the numerous rules (700 through 716) promulgated by the Secretary. *See* 38 C.F.R. §§ 20.700-.716 (2018). Rule 700, for example, reiterates the right to a Board hearing, sketches its general purposes, confirms its non-adversarial nature, and outlines the alternatives to appearing physically before a Board member, such as via electronic means. Rules 702 through 705 spell out the procedures for requesting, scheduling, and receiving notice of hearings at the Board's central office or at VA field offices. Rule 709 authorizes the Board member to hold the record open after the hearing to receive additional evidence and Rule 710 states that "testimony of witnesses, including appellants, will be heard." 38 C.F.R. § 20.710.

Two such regulations bear particular relevance here. First, Rule 700(b) states: "The purpose of a hearing is to receive argument and testimony relevant and material to the appellate issue. It is contemplated that the appellant and witnesses, if any, will be present." 38 C.F.R. § 20.700(b). This rule also provides that a hearing will not normally be allowed just so that argument can be submitted. *Id*. The second rule, 702(d), advises that, if an appellant fails to appear for a scheduled hearing and no request for a postponement has previously been granted, "the case will be processed as though the request for a hearing had been withdrawn." 38 C.F.R. § 20.702(d). "No further request for a hearing will be granted in the same appeal unless such failure to appear was with good cause and the cause for the failure to appear arose under such circumstances that a timely request for postponement could not have been submitted prior to the scheduled hearing date." *Id*.[2]

B.

Mr. Atilano served in the Army between 1964 and 1967, the latter part of which was spent in Vietnam. Almost 30 years later, he sought service connection for PTSD. The claim was ultimately granted in 2010 and a 50% rating was assigned. Shortly after this grant, the veteran sought a total disability rating based on individual unemployability (TDIU), alleging that PTSD

---

[2] The relevant statutes and regulations appear to use variations of the terms "appear," "participate," and "be present" interchangeably. As neither party has argued to the contrary, we proceed on that assumption.

prevented him from working. In December 2014, VA awarded TDIU (effective August 2010) and an increased 70% rating for PTSD. He filed a timely Notice of Disagreement and, in January 2015, with the assistance of counsel, perfected his appeal to the Board. He indicated on the appeal form that he did not want a hearing.

But in October 2015, Mr. Atilano's attorney requested a hearing before the Board's central office in Washington, D.C., to present testimony from Dr. Elaine Tripi, a licensed psychologist and certified rehabilitation counselor. Counsel also requested a 60-day extension of the deadline to submit new argument and evidence. Both requests were granted. A few months later, counsel asked that Mr. Atilano's hearing be scheduled on a date that Dr. Tripi would be testifying in other claimants' hearings because the "cost of presenting expert testimony to the Board would be significantly reduced if appellants could share costs related to the expert's testimony." R. at 263, 265.

The veteran's hearing was originally scheduled for May 2, 2016, but his counsel asked that it be postponed until June 13—again to facilitate Dr. Tripi's testimony. The Board granted this request. In letters to Mr. Atilano and his attorney, the Board indicated its expectation that the veteran would be attending; for example, it provided information about public transportation and security procedures in the Board's building. The letters also informed the veteran how to request a postponement of the hearing if necessary and warned of potential consequences for failing to attend.

On the day of the hearing, counsel and Dr. Tripi appeared at the Board's offices; the veteran did not. No transcript was made of the colloquy between counsel and the Board member assigned to decide the claims, but the Board member declined to hold the hearing without Mr. Atilano, stating that the claimant's participation was legally required. R. at 11, 239. The record was held open for 60 additional days so that Dr. Tripi could submit her report in writing and counsel could do the same with respect to argument. R. at 238-39. In her duly submitted written report, Dr. Tripi opined that Mr. Atilano was, by reason of his PTSD and in light of his educational and occupational history, unable to hold substantially gainful employment between 1995 and 2010. She also stated that, if permitted to testify, she would have defended any challenged conclusions and answered any relevant questions asked by the Board member.

In subsequent correspondence to the Board, counsel wrote that the veteran had been unable to attend the scheduled hearing because he was severely disabled and that he believed VA was

required to hold the hearing despite the veteran's absence. Counsel further argued that the veteran was prejudiced by the Board member's actions because a written report was inferior to oral testimony. Finally, counsel advised that, although Mr. Atilano didn't want to reschedule a Board hearing contingent on his participation, he would not withdraw his request for a hearing and wished to preserve for appellate review the propriety of the Board's actions.

In the decision on appeal, the Board first addressed the hearing issue. It cited Rules 700(b) and 702(d) for the proposition that a Board hearing generally will not occur when the appellant does not participate and fails to show good cause for his absence in a timely manner. The Board further found that no good cause was proffered for why Mr. Atilano did not attend the hearing, questioned why counsel didn't request some accommodation so that the veteran could participate (such as videoconferencing from a regional office), and noted that counsel had several other hearings scheduled that day in which Dr. Tripi appeared to testify but the appellants did not attend. Accordingly, the Board treated the veteran's hearing request as if it had been withdrawn. Buttressing its legal analysis, the Board discussed several policy reasons for the required attendance rule.

On the merits, the Board considered Dr. Tripi's written report. Based on that and other evidence, it granted a March 16, 2009, effective date for TDIU, but no earlier, and denied a PTSD rating higher than 50% between July 1995 and December 2010. Specifically, the Board found Dr. Tripi's conclusion that PTSD rendered the veteran unemployable was "not consistent with the objective medical findings" in the record. R. at 68. This appeal followed.[3]

## II. ANALYSIS

### A.

Before addressing Mr. Atilano's arguments, we think it important to state clearly what is not at issue in this appeal. The veteran doesn't challenge the Board's findings that he failed to provide timely notice or good cause for not attending his scheduled hearing. Nor does he challenge

---

[3] Several other issues addressed by the Board are not before us. The Board granted earlier effective dates of March 16, 2009, but no earlier, for service-connected coronary artery disease (CAD) and surgical scar residuals, as well as entitlement to temporary total ratings for PTSD based on periods of hospitalization, and denied a PTSD rating higher than 70% since December 17, 2010. Since Mr. Atilano makes no argument with respect to these issues, the appeal as to them must be dismissed. *See Lyles v. Shulkin*, 29 Vet.App. 107, 109 n.2 (2017). The Board remanded for additional development claims for higher CAD and scar ratings. Because remands are not final Board decisions, the Court has no jurisdiction to consider those matters. *See id.*

5

the Board's assessment of Dr. Tripi's written report or how it weighed any other evidence before it. And, significantly, this case is not about the right to have an expert witness testify at a Board hearing. Regulations guarantee that the testimony of witnesses "will be heard." 38 C.F.R. § 20.710. An appellant may even move to have the Board, where necessary, subpoena evidence or witnesses. 38 C.F.R. § 20.711(a). The Board knew of Dr. Tripi's intention to testify when it first set the hearing date, and it specifically granted a request to reschedule to ensure her ability to appear and give testimony.[4] R. at 244, 247, 265. In short, there is no basis in the record to presume that Dr. Tripi would have been barred from testifying if Mr. Atilano had attended the hearing.

Turning to arguments that are presented, Mr. Atilano frames the issue on appeal as "whether an appellant must be present at his or her hearing in order for his or her legal representative to elicit sworn testimony from witnesses before the Board." Appellant's Br. at 15. He asserts that the Board did not cite legal authority when it concluded that an appellant must participate. He also argues that the Board's conclusion was contrary to the plain meaning of the relevant statutes and regulations.

Here, the Board clearly cited both Rule 700(b) and Rule 702(d) as legal bases for the appellant-participation requirement. Further, as explained below, the Board's reasoning squares with the plain meaning of the statute.

B.

The proper interpretation of statutes and regulations is a legal inquiry we undertake de novo. *Lynch v. Wilkie*, 30 Vet.App. 296, 301 (2018).

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), sets forth the two-step analysis for statutory interpretation. *Procopio v. Wilkie*, 913 F.3d 1371, 1375 (Fed. Cir. 2019). If Congress through the text of the statute "has directly spoken to the precise question at issue," a court's inquiry ends and Congress's textual command must be given effect. *Chevron*, 467 U.S. at 842-43. Only if a statute is "silent or ambiguous" as to the precise question at issue must a court proceed to the second step and ask whether an agency has resolved the question "based on a permissible construction of the statute." *Id.* at 843. In analyzing the first question, we employ "the traditional tools of statutory construction." *Lynch*, 30 Vet.App. at 301. Based on the terms of subsection (b), as informed by the surrounding provisions of the statute, we

---

[4] At least one decision of this Court reflects that Dr. Tripi testified at a Board hearing together with a veteran and his wife. *See Walls v. Shulkin*, No. 16-1153, 2017 U.S. App. Vet. Claims LEXIS 1646, at *12 (Nov. 14, 2017).

6

conclude that section 7107 answers in the affirmative the question of whether the appellant's participation is required.

We begin "with the language of the statute itself." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016). Absent an explicit definition, we presume that words in a statute bear their ordinary meanings, which we glean from contemporary dictionaries. *See Gazelle v. Shulkin*, 868 F.3d 1006, 1011 (Fed. Cir. 2017). "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing." 38 U.S.C. § 7107(b). A "hearing" is defined as the "opportunity to be heard, to present one's side of a case, or to be generally known or appreciated." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 559 (1990) [WEBSTER'S NINTH]; *see, e.g.*, WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE EDITION 622 (1988) ("an opportunity to speak, sing, etc.; chance to be heard"). A leading legal dictionary likewise explains that, in the administrative context, the term "consists of any confrontation, oral or otherwise, between an affected individual and an agency decision-maker sufficient to allow [the] individual to present his case in a meaningful manner." BLACK'S LAW DICTIONARY 721 (6th ed. 1990). The rest of the sentence in subsection (b) clarifies that the opportunity to speak to, be heard by, become known to, or present a case before the Board member is not general in nature but is "afford[ed]" to "the appellant."

Although in isolation the term "hearing" may be broad, we do not construe it in isolation; instead, we read it in the context of the surrounding statutory scheme. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019). Other parts of section 7107 support our understanding that the hearing right must be exercised by an appellant through his personal participation. For example, this section authorizes the Board to provide a hearing either at its central office in Washington, D.C., or at a regional VA or Federal facility and either in person or via video teleconference. "The Board shall also determine whether to provide a hearing through the use of the facilities and equipment described in subsection (e)(1) or by *the appellant personally appearing* before a Board member." 38 U.S.C. § 7107(d)(1)(A)(ii) (emphasis added). There can't be any dispute about what the italicized language means: "to come formally before an authoritative body" and to do so "in person" and "for oneself." WEBSTER'S NINTH at 96, 878; *cf. Terrell v. United States*, 564 F.3d 442, 451 (6th Cir. 2009) (At the time the statute in question was written, "to appear meant to be physically present."). An appellant requesting a hearing before a Board member in Washington is expected to be physically present.

7

Of course, the statute gives appellants options for other hearing locations and participation methods, such as at a VA field office or via "voice transmission or through picture and voice transmission, by electronic or other means." 38 U.S.C. § 7107(e)(1). Critically for purposes of our analysis, a hearing provided through use of one of these alternative locations or means "shall be conducted in the same manner as, and shall be considered the equivalent of, a personal hearing." § 7107(e)(2). For such hearings to be conducted in the same way and considered equivalent to in-person hearings, they must require the participation of the appellant. In other words, the alternative permitted in section 7107 isn't between whether an appellant will participate in the hearing or not, but whether the appellant will appear in person or participate remotely via electronic means.

In short, the overall statutory structure of section 7107 confirms that an appellant exercising the right to a Board hearing must participate in that hearing. The appellant has the choice whether to do so by appearing personally in the presence of the Board member or by participating remotely via video conference or other electronic means, but there is no provision allowing an appellant to invoke the right to a hearing but decline to participate.[5]

The veteran's statutory argument centers upon an appeal to congressional intent. "Surely," he contends, "it was never Congress's intent to limit hearings to appellants who were healthy [enough] or who had sufficient means to travel to Washington DC to participate in a Central Office hearing or to the one or two locations in an appellant's state that has the equipment for hearings conducted electronically." Appellant's Br. at 17. The brief cites nothing to support the implication that the logistics specified by Congress for providing Board hearings prevent appellants from exercising their right to such hearings. Nor is the contention particularly salient in this case, given the Board's finding that Mr. Atilano didn't proffer any good cause for failing to attend and that counsel didn't request any accommodation that could have allowed the veteran to participate remotely, findings the appellant does not challenge. R. at 13. In any event, such arguments fail because "even the most formidable argument concerning the statute's purposes could not overcome

---

[5] The Board member in this case stated that, had good cause for Mr. Atilano's absence been provided, he could have held a hearing and heard his witness's testimony. R. at 12-13. The Board cited no authority for this proposition, and none is apparent from our review of the relevant regulations. However, our task in this appeal is to decide what the law says. Our analysis is unaffected by the possibility that some Board members, in previous cases, might have held hearings to hear expert testimony without requiring the appearance or participation of an appellant. *See Air Line Pilots Ass'n, Int'l v. Chao*, 889 F.3d 785, 792 (D.C. Cir. 2018) ("[A]gency practice cannot alter unambiguous statutory text.").

the clarity . . . in the statute's text." *Nichols v. United States*, 136 S. Ct. 1113, 1119 (2016) (quotation marks omitted).

In his reply brief, Mr. Atilano focuses on subsection (b) of the statute, contending that the plain language of the statute "does not give the Secretary either the authority or the discretion to decide when it may deny a requested hearing" because it "does not set conditions [that] an appellant must meet to avail him[self] . . . of a personal hearing before the Board" or state that a hearing may be denied if the appellant is "unwilling to appear personally at the hearing." Reply Br. at 3. As discussed above, Congress drafted section 7107 to expressly require the personal (physical or electronic) appearance of the appellant.

Having determined that the plain meaning of the statute's text requires an appellant's in-person or electronic participation, we find no error in the Board's decision not to hold a hearing despite Mr. Atilano's refusal to take part in it.

C.

Although our resolution of the issue at *Chevron* step one means we need go no further, we think it appropriate to address in the alternative whether the regulatory provisions relied on by the Board support its conclusions and, if so, whether they are reasonable. The best that can be said of section 7107—from the veteran's perspective—is that it may be ambiguous as to whether an appellant is expected to participate in a Board hearing that he himself requests or that it does not explicitly address whether an expert witness may present testimony if the appellant is not present. *Cf.* Reply Br. at 3 ("The statute does not set conditions which an appellant must meet to avail him[self] . . . of a personal hearing before the Board . . . . The statute simply mandates that the Board shall decide an appeal only after affording the appellant an opportunity for a hearing."). But even if the statutory text were silent or ambiguous on this matter, we would be operating in *Chevron* step-two territory. In that situation, an agency's regulation filling the statutory gap must be accepted, provided it is "based on a permissible construction of the statute." 467 U.S. at 843; *see Lynch*, 30 Vet.App. at 301-03.

As explained below, numerous considerations persuade us that the Secretary's regulations in this area do not allow an appellant to refuse to participate in a hearing under these circumstances and reflect a reasonable construction of section 7107.

*1.*

For the following reasons, the regulations cited by the Board constitute valid implementations of section 7107. First, Congress clearly gave the Secretary the authority to promulgate rules for Board hearings when it specified that appellants "will be accorded hearing and representation rights pursuant to the provisions of this chapter [71] and regulations of the Secretary." 38 U.S.C. § 7105(a). The only section in chapter 71 that mentions Board hearings is 7107. Thus, the regulations governing Board hearings are valid unless they are an unreasonable interpretation of that statute.[6] *See Chevron*, 467 U.S. at 844.

And to the extent section 7107 is deemed silent on the question, the regulations cited by the Board are consistent with the statutory framework. Rule 700(b) specifies the purposes of a hearing—submission of argument and testimony—and that "[i]t is contemplated that the appellant and witnesses, if any, will be present." 38 C.F.R. § 20.700(b). This rule also provides that a hearing will not normally be allowed just so that argument can be submitted. *Id*. The other relevant regulation, Rule 702(d), explains the consequences if an appellant fails to appear for a scheduled hearing without adequate notice, namely, "the case will be processed as though the request for a hearing had been withdrawn." 38 C.F.R. § 20.702(d). Nothing in these regulations stands in tension with the text of section 7107. Section 20.700(b)'s requirement of the appellant's presence does not mandate that he physically appear at the Board's offices in Washington. As the statute instructs, VA recognizes that an appellant may request and participate in a hearing at the Board's central office, a travel Board hearing at a regional office, or a videoconference hearing.[7] *See* 38 U.S.C. § 7107(d), (e); 38 C.F.R. §§ 20.700(e), 20.703-705. Moreover, the Secretary has set forth procedures for an appellant to reinvoke the right to a Board hearing even after having failed

---

[6] The Supreme Court has recognized that agency rulemaking authority can come in two varieties, and it has articulated different standards depending on which is at issue. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority" and regulations issued under such authority must be "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Alternatively, when delegation is only "implicit," a court must accept an agency's regulation when it is "a reasonable interpretation" of the statute. *Id*. Neither party has addressed whether the Secretary enjoys express or implied rulemaking authority in this context. An answer is immaterial to our analysis because we would find that deference is due under either standard.

[7] The regulations recognize "[i]nformal hearings," where "the appellant cannot, or does not wish to, appear"; in those circumstances, the appellant's representative may present oral arguments of up to 30 minutes' duration. 38 C.F.R. § 20.700(d). Importantly, an informal hearing "will not be construed to satisfy an appellant's request to appear in person." *Id*.

to participate in a previously requested one. *See* 38 C.F.R. § 20.702(d). Here, there is simply no indication that the regulations quoted above conflict with section 7107.

Indeed, VA's expectation that appellants will participate in their Board hearings harmonizes with what the Court has always understood to be the primary purposes of the hearing right. "Unlike a traditional judicial appeal where review is of the record, the opportunity for a personal hearing before the Board is significant because it is the veteran's one opportunity to personally address those who will find facts, make credibility determinations, and ultimately render the final Agency decision on his claim." *Arneson v. Shinseki*, 24 Vet.App. 379, 382 (2011). We've also noted that "personal hearings before the Board can serve as fora in which claimants can receive information necessary for the fair and efficient development of their claims." *Cook I*, 28 Vet.App. at 337. And, perhaps most importantly in this case, we've observed that a key motivating factor in Congress's decision to make the opportunity for a hearing a statutory right were statistics suggesting that an appellant's "personal appearance before the Board makes a significant difference in achieving favorable resolution of a claim." *Id.* VA regulations that fill gaps in the statutory text in a manner consistent with the congressional goals underlying that text cannot constitute unreasonable interpretations of the statute. *See Chevron*, 467 U.S. at 844.

A final consideration persuading us that the regulations cited by the Board are consistent with the statute is the "very basic tenet of administrative law that agencies should be free to fashion their own rules of procedure." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 544 (1978). Absent a congressional command to the contrary, courts "generally accord agencies broad discretion in fashioning hearing procedures." *Lyons v. Barrett*, 851 F.2d 406, 410 (D.C. Cir. 1988); *see also Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1006 (6th Cir. 2012) (An agency "has broad authority to fashion its own procedures for developing the evidence on which it bases its decisions."). Here, the Secretary proffers that requiring appellants' participation in requested Board hearings—coupled with alternative avenues for submitting evidence and argument—is a reasonable choice "that preserves VA's limited resources" while discharging the agency's duty to provide hearing opportunities in a timely manner. Secretary's Br. at 10-11. Of course, when Congress has issued clear instructions, they cannot be overcome by appeals to administrative efficiency. *See, e.g.*, *Cook I*, 28 Vet.App. at 345. But given—at best— Congress's silence on this question, and the Secretary's concomitant duty to provide Board hearings on "the earliest possible date," 38 U.S.C. § 7107(d)(1)(A)(i), (B)(iii), we find no legal basis for

11

altering his reasonable choice of declining to hold Board hearings for appellants who request but then refuse to participate in them.

In sum, under either standard enunciated in *Chevron*, we find the portions of Rules 700(b) and 702(d) cited by the Board to be reasonable constructions of section 7107. We therefore conclude that, even if the statute were silent or ambiguous as to the precise question at issue, we would defer as a permissible gap-filling measure to the Secretary's determination that appellant participation is required in requested Board hearings.

*2.*

Two final contentions warrant brief discussion. First, the veteran quotes § 20.700(a), which says: "A hearing on appeal will be granted if an appellant, or an appellant's representative acting on his or her behalf, expresses a desire to appear in person." As he reads it, this provision means that an appellant "has the right to a hearing, and a hearing will be granted, if an appellant's *representative* expresses a desire to appear in person." Reply Br. at 3-4 (emphasis added). This is not a plausible reading. The phrase "on behalf of"—of which "on his or her behalf" is simply a variant—is well understood to mean "as the agent or representative of." GARNER'S MODERN AMERICAN USAGE 94 (3d ed. 2009). Thus, the "desire to appear in person" expressed by a representative can only be understood as the *appellant's* desire, not the representative's. Any other interpretation of Rule 700(a) would impermissibly read "on his or her behalf" out of the regulation. *See, e.g.*, *McCarroll v. McDonald*, 28 Vet.App. 267, 274 (2016). Rule 700(a) doesn't give a representative a right to a Board hearing. (The statute makes no mention of representatives in the hearing context.) In any event, reading § 20.700(a) as permitting an appellant not to participate in his Board hearing would contradict the clear indications in Rules 700(b) and 702(d) that such participation is required. We reject an interpretation that introduces such disharmony between related regulatory provisions. *See Dent v. McDonald*, 27 Vet.App. 362, 374 (2015).

Second, Mr. Atilano argues, in response to the Secretary's contentions, that the portion of Rules 700(b) and 702(d) cited by the Board aren't entitled to *Chevron* deference because they preexisted section 7107, which was codified in 1988, and thus were not promulgated to interpret it. Oral Argument at 2:50-3:30, 46:40-47:00. It is true that a regulation predating a statute cannot have been promulgated to interpret the statute and, hence, is not entitled to *Chevron* deference. *Cook II*, 908 F.3d at 817 ("[W]e agree with the Veterans Court's conclusion that no such deference

is warranted because the Secretary has not promulgated a regulation interpreting § 7107(b)."). Such was the situation with subsection (a) of Rule 700. *See Cook I*, 28 Vet.App. at 339-40.

But the regulatory texts at issue here suffer from no such defect. Indeed, VA added the relevant language—"It is contemplated that the appellant and witnesses, if any, will be present" in Rule 700(b) and "If an appellant . . . fails to appear for a scheduled hearing . . . , the case will be processed as though the request for a hearing had been withdrawn" in Rule 702(d)—in 1992 specifically to implement section 7107. *See* Appeals Regulations; Rules of Practice, 57 Fed. Reg. 4088, 4119-20 (Feb. 3, 1992) (final rule); *see also* 54 Fed. Reg. 34,334 (Aug. 18, 1989) (proposed rule). At the time the statute was passed, the regulations governing Board hearings were codified elsewhere and did not specify whether an appellant was expected to participate. *See generally* 38 C.F.R. §§ 19.157-.171 (1988). The regulatory chronology in this instance is not a bar to *Chevron* deference.

### III. CONCLUSION

Having fully considered the parties' arguments, the record, and the relevant law, the Court AFFIRMS the portion of the April 18, 2017, Board decision denying a PTSD rating higher than 50% between July 1995 and December 2010 and an earlier effective date for TDIU. The balance of the appeal is DISMISSED.