# United States Court of Appeals for the Federal Circuit

_____

**JESUS G. ATILANO,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

_____

2020-1579

_____

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-1428, Judge Amanda L. Meredith, Judge Coral Wong Pietsch, Judge Joseph L. Toth.

_____

Decided: September 14, 2021

_____

SEAN A. RAVIN, Miami, FL, argued for claimant-appellant.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CLAUDIA BURKE, JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.; MARTIE ADELMAN, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before LOURIE, TARANTO, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Jesus G. Atilano appeals the decision of the United States Court of Appeals for Veterans Claims affirming the Board of Veterans' Appeals's decision to treat Mr. Atilano's personal absence from his hearing as a withdrawal of his hearing request. According to the Veterans Court, 38 U.S.C. § 7107 (2018) unambiguously requires that an appellant exercising the right to a Board hearing personally participate in that hearing. Because we conclude that § 7107 does not unambiguously so require, we vacate and remand for further consideration of the statute and the agency's related regulations.

## BACKGROUND

### I

Mr. Atilano served on active duty in the Army from 1964 through 1966, including in Vietnam. In 1995, Mr. Atilano filed his initial application for veterans disability compensation for post-traumatic stress disorder (PTSD) with the El Paso Regional Office (RO) of the Department of Veterans Affairs (VA). In 2002, Mr. Atilano testified that his diagnosis of PTSD adversely affected his ability to maintain a job. In 2010, the RO granted Mr. Atilano's claim for entitlement to service connection for PTSD with an evaluation of fifty percent effective July 31, 1995. The RO explained that this evaluation was for occupational and social impairment with reduced reliability and productivity.

Later in 2010, Mr. Atilano applied for increased compensation based on total disability individual unemployability (TDIU). In 2012, the RO denied this request. Mr. Atilano filed a Notice of Disagreement (NOD) with the RO, asserting that it had failed to make specific determinations and that it had also failed to address all relevant evidence. Agreeing with Mr. Atilano, in December 2014,

the RO granted him entitlement to TDIU effective August 31, 2010, and his evaluation of PTSD was increased to seventy percent disabling effective December 17, 2010. The RO explained that it assigned a seventy percent evaluation for his PTSD based on his "[d]ifficulty in adapting to work," "[o]bsessional rituals which interfere with routine activities," "[d]ifficulty in adapting to a worklike setting," "[s]uicidal ideation," "[o]ccupational and social impairment with reduced reliability and productivity," "[c]hronic sleep impairment," "[a]nxiety," and the "examiner's assessment of [his] current mental functioning." J.A. 205. Mr. Atilano filed another timely NOD disagreeing with the disability ratings and effective dates assigned. He perfected his appeal with the Board in January 2015 by filing "VA Form 9."

In October 2015, Mr. Atilano requested a hearing before the Board's central office in Washington, DC to present medical expert testimony regarding his PTSD from a licensed psychologist and certified rehabilitation counselor. Mr. Atilano requested a hearing date of April 6, 2016, so that his medical expert could testify both at his hearing and at the hearings of other appellants represented by his counsel, allowing the appellants to share costs related to the expert's testimony. He later changed the requested date to June 13, 2016, and the Board agreed.

On the day of the hearing, Mr. Atilano's counsel and his medical expert, Dr. Elaine Tripi, appeared before the Board, but Mr. Atilano did not. Mr. Atilano was unable to attend the hearing because of his severe disabilities. Veterans Law Judge Reinhart refused to hear Dr. Tripi's expert testimony because Mr. Atilano was not present for the hearing. Unable to present live expert testimony, Mr. Atilano's counsel requested a 60-day extension of time to submit written evidence and argument in support of the appeal to the Board. Mr. Atilano subsequently submitted an informal brief to the Board and attached a written medical expert opinion by Dr. Tripi.

The Board ultimately denied Mr. Atilano's request for entitlement to an increased disability rating for his evaluation of PTSD and earlier effective dates for both his disability and TDIU. In rejecting Mr. Atilano's claim, the Board found that Dr. Tripi's report was not consistent with objective medical findings. As to the refusal to let Dr. Tripi testify in person without Mr. Atilano present, the Board explained that "[p]ursuant to 38 C.F.R. § 20.700(b), the purpose of a hearing is to receive argument and testimony relevant and material to the appellate issue," and that "[i]t is contemplated that the appellant and witnesses, if any, 'will be present.'" [Title Redacted by Agency], No. 97-06 321, 2017 WL 2498917, at *7 (B.V.A. Apr. 18, 2017). The Board then explained that, "[u]nder 38 C.F.R. § 20.702(d), if an appellant fails to appear for a scheduled hearing and a request for postponement has not been received and granted, the case will be processed as though the request for a hearing had been withdrawn." *Id.* The Board also stated its view that the purpose of the hearing is to take testimony from the appellant, and that "allowing an expert witness to provide testimony before a VLJ without the appellant subverts the purpose of a Board hearing, expends limited resources, and prevents another veteran" from having a timely hearing and adjudication. *Id.* at *9.

The Board further held that under § 20.702(d), "[i]f the Veteran, either on his own or by way of his attorney, had provided good cause for his failure to appear at the hearing, then the presiding Board member can allow for testimony from the Veteran's witnesses." *Id.* at *7. The Board found that Mr. Atilano's cause for not attending the hearing—that he was too disabled to attend—did not satisfy the good cause requirement. *Id.* In so finding, the Board emphasized that Mr. Atilano's counsel had several other hearings scheduled that day, in which Dr. Tripi likewise appeared to testify but that the veterans did not attend.

## II

The Veterans Court affirmed the Board. *Atilano v. Wilkie*, 31 Vet. App. 272, 275 (2019). The sole issue before the Veterans Court was whether a veteran must be present at his hearing for his legal representative to elicit sworn testimony from witnesses before the Board. At step one of *Chevron*, the Veterans Court concluded that the language of 38 U.S.C. § 7107 (2018) unambiguously requires the appellant's participation at his hearing. *Id.* at 279 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).

The Veterans Court started its analysis with § 7107(b), which states: "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing." *Id.* at 279. Citing definitions of the term "hearing" in Webster's Ninth Dictionary and Black's Law Dictionary, the Veterans Court explained that the language of § 7107(b) requires "that the opportunity to speak to, be heard by, become known to, or present a case before the Board member is not general in nature but is 'afford[ed]' to 'the appellant.'"[1] *Id.* (alteration in original). The Veterans Court also relied on § 7107(d)(1)(A)(ii), which states: "The Board shall also determine whether to provide a [virtual] hearing . . . or by *the appellant personally appearing* before a Board

---

[1]    Webster's Ninth Dictionary defines "hearing" as the "opportunity to be heard, to present one's side of a case, or to be generally known or appreciated." *Atilano*, 31 Vet. App. at 279 (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 559 (1990) [WEBSTER'S NINTH]). Black's Law Dictionary defines "hearing" as consisting "of any confrontation, oral or otherwise, between an affected individual and an agency decision-maker sufficient to allow [the] individual to present his case in a meaningful manner." *Atilano*, 31 Vet. App. at 279 (citing BLACK'S LAW DICTIONARY 721 (6th ed. 1990)).

member or panel." *Id.* at 280. The court reasoned that "there can't be any dispute about what the italicized language means: to come formally before an authoritative body and to do so in person and for oneself." *Id.* (internal quotation marks omitted). Finally, the court cited § 7107(e)(2), pertaining to virtual hearings, which states that any virtual hearing "shall be conducted in the same manner as, and shall be considered the equivalent of, a personal hearing." *See id.* The court reasoned that "[f]or such hearings to be conducted in the same way and considered equivalent to in-person hearings, they must require the participation of the appellant." *Id.* The Veterans Court thus reasoned that the "overall statutory structure of section 7107 confirms that an appellant exercising the right to a[n in-person or virtual] Board hearing must participate in that hearing." *Id.*

In the alternative, the Veterans Court concluded that the VA's regulations interpreting § 7107 reflect a reasonable construction of the statute—satisfying *Chevron* step two—and that the regulations "do not allow an appellant to refuse to participate in a hearing under these circumstances." *Id.* at 281–83 (citing *Chevron*, 467 U.S. at 843).

Mr. Atilano appeals. We have jurisdiction under § 7292.

## DISCUSSION

### I

On appeal, Mr. Atilano challenges the Veterans Court's interpretation of 38 U.S.C. § 7107 (2018). "We review statutory and regulatory interpretations of the Veterans Court *de novo*." *Gazelle v. Shulkin*, 868 F.3d 1006, 1009 (Fed. Cir. 2017) (quoting *Parrott v. Shulkin*, 851 F.3d 1242, 1247 (Fed. Cir. 2017)).

Mr. Atilano contends that the Veterans Court's interpretation of § 7107 incorrectly eliminates the right of a severely disabled veteran to an in-person hearing.

Specifically, he asserts that the Veterans Court misinterpreted § 7107 "as requiring the presence and participation of the appellant [as opposed to appellant's counsel] as a prerequisite to calling witnesses and presenting testimony, including the sworn testimony of a medical expert." Appellant's Br. 15. He asserts that the Veterans Court's interpretation ignores provisions allowing veterans to be represented by counsel. He further contends that such an interpretation would allow only those veterans who can personally appear and participate in hearings before the Board to benefit from live testimony. In other words, the Veterans Court's interpretation would exclude any veteran who is bed ridden or living with a severe mental disability that prevents travel or appearance at a hearing from presenting live testimony from experts, lay persons, or family members on the veteran's behalf in an appeal.

The government contends that the language of the statute unambiguously requires that the veteran be present for the hearing unless good cause is shown for his absence. Assuming the statute is ambiguous, however, the government concedes that 38 C.F.R. § 20.700(b) does not require the appellant to personally appear, but rather that it merely contemplates the person appearing for the hearing. Oral Arg. at 19:37–20:20, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1579_04062021.mp3. Nonetheless, the government asserts that other regulatory provisions require a veteran to appear in person or forfeit his right to an in-person hearing and that this represents a reasonable interpretation of § 7107.

The Veterans Court proceeded under the two-step framework of analysis for statutory interpretation set forth in *Chevron*, 467 U.S. at 842–43. The first step in that framework is to determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If Congress's intent is clear, the court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. The Veterans Court ruled that the statute

unambiguously requires the claimant's personal presence at the hearing. We reject that ruling.

## II

To determine whether Congress has expressed a particular unambiguous intent, we employ traditional tools of statutory construction and examine "the statute's text, structure, and legislative history, and apply the relevant canons of interpretation." *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012) (quoting *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000)). For the reasons provided below, we conclude that § 7107 does not unambiguously establish that a veteran must be present at his hearing to present expert testimony. The statute is at best silent on the point.

Nothing in the language of § 7107 speaks to whether an appellant must personally attend his hearing or forfeit his right to that hearing. Section 7107(b) states only that an "appellant" is afforded "an opportunity for a hearing." It says nothing about who must attend the hearing. In ordinary legal usage, a party can be given a "hearing" solely for the party's counsel to argue or for presentation of testimony by a person other than the party, with the party not present but represented in person by counsel. Section 7107(b)'s language does not indicate a special narrower meaning. Nor does it distinguish between appellants who are physically and mentally capable of participating at a hearing and those who are not. While the opportunity for a hearing is "afforded to the appellant," nothing in this statutory language demands the appellant's presence when the appellant is represented by an agent or counsel.

Nor do the other subsections of § 7107 support the Veterans Court's interpretation. Although § 7107(d)(1)(A)(ii) refers to an "appellant personally appearing before a Board member," that section is more reasonably read as distinguishing between what the statute refers to as a personal

Board hearing and a virtual Board hearing.  The pertinent language states:  "The Board shall also determine whether to provide a [virtual] hearing . . . or by *the appellant personally appearing* before a Board member or panel." § 7107(d)(1)(A)(ii) (emphasis added).  We read the words "personally appearing" in this subsection to refer to an in-person hearing.  Likewise, the Veterans Court's citation of § 7107(e)(2)—which states that any virtual hearing will be "conducted in the same manner as, and shall be considered the equivalent of, a personal hearing"—is unavailing because the recitation of "personal hearing" is simply a reference to an in-person hearing as opposed to a virtual hearing.

We also fail to see how the definitions of "hearing" cited by the Veterans Court support its interpretation of § 7107. Neither the definition in Webster's Ninth nor the definition in Black's Law Dictionary requires a party to be present for a "hearing."  Rather, under both definitions, an attorney representative could reasonably take the place of the appellant, and the appellant would still be afforded the "opportunity to be heard, to present one's side of a case, or to be generally known or appreciated" or be able to present his or her case "to an agency decision-maker . . . in a meaningful manner" through the testimony of other witnesses. *See* WEBSTER'S NINTH at 559; BLACK'S LAW at 721.

We also consider "the placement and purpose of the language within the statutory scheme." *Barela v. Shinseki*, 584 F.3d 1379, 1383 (Fed. Cir. 2009).  The overall statutory structure of Title 38 supports Mr. Atilano's view that a veteran may be represented by an agent or counsel, who may request a hearing to present non-party witness testimony under § 7107.  For example, under 38 U.S.C. § 5904, Congress granted the Secretary the authority to "recognize any individual as an agent or attorney for the preparation, presentation, and prosecution of claims under laws administered by the Secretary."  Given the statutory authority for veterans to be represented by agents or attorneys before

the Board, it would seem inappropriate to construe § 7107 to deny hearings for those represented veterans unable to attend in person without clear statutory language instructing as such.

Beyond the statute's text, we may also consider the legislative history of the statute. *Gilead Scis., Inc. v. Lee*, 778 F.3d 1341, 1348 (Fed. Cir. 2015). The Veterans Court previously addressed the legislative history of § 7107 in *Cook v. Snyder*, 28 Vet. App. 330 (2017). In *Cook*, the Veterans Court explained that a "claimant's right to a personal hearing before the Board has long been guaranteed by [the] VA." *Id.* at 336. Dating back to World War II, the right was originally penned in the Rules of Practice of the Board of Veterans' Appeals, which recited that "a hearing will be allowed, if desired by the claimant *or his representative.*" *Id.* (emphasis added). This rule was then published in the Code of Federal Regulations in 1964, specifying that a "hearing on appeal shall be granted where a claimant *or his representative* expresses a desire to appear in person." 38 C.F.R. § 19.133(a) (1965) (emphasis added). Then, in 1988, Congress codified this requirement by amending 38 U.S.C. § 4004(a) to add that "[t]he Board shall decide any such appeal only after affording the claimant an opportunity for a hearing." 38 U.S.C. § 4004(a) (1988); *see also Cook*, 28 Vet. App. at 336. This provision was then codified in 38 U.S.C. § 7107(b) (2018).[2]

The accompanying Senate Veterans' Affairs Committee report explained that the statute "would codify a right currently provided by [§ 19.133(a)] to an opportunity for a hearing before the [Board]." *Cook*, 28 Vet. App. at 336 (alterations in original) (quoting S. Rep. No. 100-418, at 34 (1988)). "In the Committee's view, the right to a hearing is so fundamental to fair proceedings that it should be

---

[2]    Effective April 10, 2020, § 7107 was amended to exclude the language in subsection (b).

elevated to the level of a statutory guarantee." *Id.* (quoting S. Rep. No. 100-418, at 34). The Committee report explained that "a personal appearance before the Board makes a significant difference in achieving favorable resolution of a claim." *Id.* at 337 (quoting S. Rep. No. 100-418, at 39).

Because § 7107 was intended to codify a long-standing rule allowing a request for a hearing by the claimant or the claimant's representative, we view this history as fairly supporting Mr. Atilano's interpretation of the statute to allow a veteran's representative to participate on the claimant's behalf by presenting witness testimony at a Board hearing even if the veteran is too disabled to attend. At a minimum, this history does not support an interpretation that would deny the fundamental right to a hearing to those veterans whose disability is so severe that they cannot attend the hearing.

We hold that the Veterans Court erred as a matter of law when it held that "the plain meaning of the statute's text requires an appellant's in-person or electronic participation." *See Atilano*, 31 Vet. App. at 281. Rather, the language of § 7107 does not unambiguously require a veteran to be present at his hearing for his legal representative to elicit sworn testimony from witnesses before the Board.

## III

That is all we decide. The Veterans Court briefly applied *Chevron* step two, but its analysis of that issue warrants reconsideration. The Veterans Court's analysis focused on whether the regulations conflicted with its errant interpretation of § 7107. *See Atilano*, 31 Vet. App. at 282 (stating that "[n]othing in these regulations stands in tension with the text of section 7107" and "there is simply no indication that the regulations quoted above conflict with section 7107"). Further analysis is warranted regarding whether the regulations actually demand the veteran's attendance or say something less, as suggested

by the agency's concession in this court. *See supra* p. 7. It is possible, moreover, that particular regulations invoked by the agency do not warrant *Chevron* deference as an interpretation of a statute.[3] Indeed, if the agency adopted the regulations based on its more general authority to adopt regulations about the conduct of Board proceedings, without purporting to be interpreting language of § 7107—which the agency has not argued before us—*Chevron* deference would not seem to be the issue, but, rather, compliance with the judicial review standards of 38 U.S.C. §§ 7261 and 7292. Finally, if *Chevron* applies, any regulatory adoption of the position the agency urges must be tested to ensure that it is not itself contrary to "unambiguous statutory language" and is not an "unreasonable resolution of language that is ambiguous." *United States v. Eurodiff S.A.*, 555 U.S. 305, 316 (2009). The effect on veterans so disabled that they cannot be present in person seems relevant to at least the reasonableness issue.

We do not decide those matters in the first instance. Nor do we decide whether, if the Board erred in refusing to

---

[3]    *See Cook v. Wilkie*, 908 F.3d 813, 817 (Fed. Cir. 2018) ("The Secretary has not requested *Chevron* deference for his interpretation, and we agree with the Veterans Court's conclusion that no such deference is warranted because the Secretary has not promulgated a regulation interpreting § 7107(b)."); *Atilano*, 31 Vet. App. at 284 ("It is true that a regulation predating a statute cannot have been promulgated to interpret the statute and, hence, is not entitled to *Chevron* deference. . . . Such was the situation with subsection (a) of Rule 700." (citation omitted)); *Pub. Citizen, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 332 F.3d 654, 659 (D.C. Cir. 2003) ("[R]egulations cannot provide a basis for deferring to the [agency's] interpretation of the meaning of the subsequently enacted [statutory] phrase . . . .").

permit the medical expert to testify in person without Mr. Atilano's presence, that error was harmless.[4]

### CONCLUSION

For the foregoing reasons, we vacate the Veterans Court's decision and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED**

### COSTS

No costs.

---

[4]    We note that Mr. Atilano did not challenge the VA's regulations as arbitrary and capricious.  Thus, we do not consider that question in this appeal either.