# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-1428

JESUS G. ATILANO, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Decided November 3, 2022)

*Sean A. Ravin*, of Coral Gables, Florida, was on the brief for the appellant.

*Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Mark D. Vichich*, all of Washington, D.C., were on the brief for the appellee.

*Michael D. Kummer*, *Renee A. Burbank*, and *Byron M. Moore*, of Washington, D.C., and *Alexandra M. Gonsman*, of San Francisco, California, were on the brief for the National Veterans Legal Services Program as amicus curiae.

Before PIETSCH, MEREDITH, and TOTH, *Judges*.

PER CURIAM. TOTH, *Judge*, filed a concurring opinion.

PER CURIAM: When Army veteran Jesus G. Atilano failed to attend the hearing he requested before the Board of Veterans' Appeals, the Board member—concluding that the veteran's attendance was required for him to exercise the hearing right—declined to hold the hearing in which the veteran's counsel would elicit testimony from an expert witness on issues related to PTSD and a TDIU rating. We interpreted 38 U.S.C. § 7107 as requiring an appellant requesting a hearing to attend that hearing either in person or remotely via electronic means. *Atilano v. Wilkie* (*Atilano I*), 31 Vet.App. 272, 279-81 (2019). Alternatively, we held that, even if section 7107 were ambiguous, VA regulations that mandated attendance by claimants constituted a reasonable construction of the statute. *Id.* at 282-83.

The Federal Circuit vacated this Court's judgment but held only that section 7107 did not unambiguously mandate an appellant's attendance for his legal representative to elicit sworn testimony from witnesses before the Board. *Atilano v. McDonough* (*Atilano II*), 12 F.4th 1375,

1381-82 (Fed. Cir. 2021). Despite the purely legal nature of the case, the Federal Circuit did not explicitly resolve the matter and instead remanded it for us to reconsider the issue—this time in accordance with some specific guidance. At our invitation, the parties submitted supplemental briefing, and we thank them for that. Considering not only the letter but the spirit of the Federal Circuit's opinion, however, we conclude that we have no practical option but to rule in favor of the veteran and to remand this matter to the Board for further proceedings.

## I. ANALYSIS

When readjudicating a remanded case, a lower court is foreclosed from reconsidering "issues implicitly or explicitly decided on appeal" by a higher court. *TecSec, Inc. v. IBM*, 731 F.3d 1336, 1341-42 (Fed. Cir. 2013). Known as the "mandate rule," *id.* at 1342, this serves as a corollary to a broader principle known as the "law of the case doctrine," which establishes that, once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case. *See Arizona v. California*, 460 U.S. 605, 618 (1983). And as relevant here, the mandate rule establishes that, when interpreting the Federal Circuit's decision, "'both the letter *and the spirit* of the mandate must be considered.'" *TecSec, Inc.*, 731 F.3d at 1342 (emphasis added) (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)). The Federal Circuit has consistently returned to this last point over the years. *See, e.g.*, *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1374 (Fed. Cir. 2021); *Banks v. United States*, 741 F.3d 1268, 1279 (Fed. Cir. 2014). To that end, we assess the scope of our duty on remand "not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998).

The legal question in this case, as framed by the Federal Circuit, is whether section 7107 "requires that an appellant exercising the right to a Board hearing personally participate in that hearing." *Atilano II*, 12 F.4th at 1377. The first time we considered it, we were persuaded that the text, structure, and purpose of section 7107 showed that Congress envisioned personal participation by the claimant. *Atilano I*, 31 Vet.App. at 279-81. The Federal Circuit "reject[ed] that ruling." *Atilano II*, 12 F.4th at 1380. It held that the statute "does not unambiguously establish that a veteran must be present at his hearing to present expert testimony."[1] *Id.* Ostensibly, the Federal

---

[1] The applicable version of section 7107(b) provided: "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing." 38 U.S.C. § 7107(b) (2012 Supp. IV 2017).

Circuit concluded only that the statute was "at best silent" on the question. *Id.* But its analysis went further to signal clearly that the text, structure, and purpose all supported Mr. Atilano's right to a hearing without attending it. To that end, it reasoned that "nothing in this statutory language [of section 7107(b)] demands the appellant's presence when the appellant is represented by an agent or counsel." *Id.* Rather, in "ordinary legal usage," the meaning of the word "hearing" does not "require[ ] a party to be present." *Id.*

The Federal Circuit also ascribed very different significance to surrounding statutory provisions that we thought buttressed the presence requirement in section 7107(b)'s text. *See Atilano I*, 31 Vet.App. at 279-80 (discussing 38 U.S.C. § 7107(d)(1)(A)(ii), (e)(2)). Contra our reading, it said that these provisions "more reasonably read as distinguishing between what the statute refers to as a personal Board hearing and a virtual Board hearing." *Atilano II*, 12 F.4th at 1380. Still further, the "overall statutory structure of Title 38," the Federal Circuit continued, "supports Mr. Atilano's view that a veteran may be represented by an agent or counsel, who may request a hearing to present non-party witness testimony under § 7107." *Id.* at 1381. Under this rationale, "it would seem *inappropriate* to construe § 7107 to deny hearings for those represented veterans unable to attend in person without clear statutory language instructing as such." *Id.* (emphasis added). And finally, with respect to the congressional purpose behind the right to a hearing—which, we noted, emphasized the opportunity of the *claimant* to speak with the Board member face to face—the Federal Circuit read the legislative history "as fairly supporting Mr. Atilano's interpretation of the statute to allow a veteran's representative to participate on the claimant's behalf by presenting witness testimony at a Board hearing even if the veteran is too disabled to attend." *Id.*

However, after this analysis, the Federal Circuit held only that "the language of § 7107 does not unambiguously require a veteran to be present at his hearing for his legal representative to elicit sworn testimony from witnesses before the Board." *Id.* at 1381-82. The court remanded the case to us to reconsider the question of deference to VA's regulatory interpretation. *Id.* at 1382.

That reconsideration was to occur within specific parameters, however. Per the Federal Circuit, the Secretary "concede[d]" at oral argument "that 38 C.F.R. § 20.700(b) does not require the appellant to personally appear, but rather . . . merely *contemplates* the person appearing for the hearing"—"something less" than "demand[ing] the veteran's attendance." *Id.* at 1379, 1382

(emphasis added).[2] Perhaps, the court suggested, *Chevron* deference was not warranted at all if § 20.700(b) did not purport to interpret section 7107(b), a contention the Secretary "ha[d] not argued" in that court. *Id.* at 1382. And, finally, the Federal Circuit cautioned that any regulation could not be an "unreasonable resolution of [statutory] language that is ambiguous," indicating that "[t]he effect on veterans so disabled that they cannot be present in person seems relevant to . . . the reasonableness issue." *Id.*

These are the circumstances in which we readjudicate this case. One can take different positions—as the parties do in supplemental briefing—on whether *Atilano II* leaves any room at all for the Secretary's arguments about the permissibility of VA's regulation. It may be that the letter of the Federal Circuit's mandate permits us to reaffirm our alternative holding that the Secretary, in light of the statute's silence on the matter, promulgated a reasonable regulation requiring a veteran's personal presence (actual or virtual) at a Board hearing. What is absolutely clear, however, is that the spirit of that court's mandate, conveyed plainly by the scope and tone of its opinion, is unequivocal about which arguments ought to prevail.

In *Atilano I*, we held the Secretary's regulatory requirement that a claimant attend a Board hearing to be a reasonable interpretation that was consistent with the statutory scheme. Four related considerations persuaded us: (1) Congress gave the Secretary specific authority to promulgate rules for Board hearings; (2) the (at best) silence of section 7107 on the question of claimants' attendance permitted the Secretary to resolve the issue with a reasonable regulation; (3) § 20.700(b)'s requirement of claimants' attendance "harmonize[d] with what the Court has always understood to be the primary purpose[] of the hearing right"; and (4) VA, like all agencies, has the freedom within the confines set by Congress to fashion its own procedural rules. *Atilano I*, 31 Vet.App. at 281-84.

There is no way to read the Federal Circuit's analysis as anything other than a wholesale repudiation of our reasoning. The opinion makes perfectly clear that the Federal Circuit regarded

---

[2] In 2017, § 20.700(b) read in full:

> The purpose of a hearing is to receive argument and testimony relevant and material to the appellate issue. It is contemplated that the appellant and witnesses, if any, will be present. A hearing will not normally be scheduled solely for the purpose of receiving argument by a representative. Such argument should be submitted in the form of a written brief. Oral argument may also be submitted on audio cassette for transcription for the record in accordance with paragraph (d) of this section. Requests for appearances by representatives alone to personally present argument to Members of the Board may be granted if good cause is shown. Whether good cause has been shown will be determined by the presiding Member assigned to conduct the hearing.

the relevant statutory text, structure, and purpose as individually and collectively "supporting" Mr. Atilano's position that a claimant too disabled to attend may still invoke the right to a Board hearing. *Atilano II*, 12 F.4th at 1381. Given this premise, how could any contrary regulation of the Secretary be a reasonable construction of the statute? *See id.* ("[I]t would seem inappropriate to construe § 7107 to deny hearings for those represented veterans unable to attend in person without clear statutory language instructing as such.").

Indeed, the Federal Circuit understood the Secretary to concede that § 20.700(b) could not be read as requiring a claimant's attendance at a hearing. *Id.* at 1379, 1382. The Secretary now suggests that the Federal Circuit wrongly interpreted his statements at argument as a retreat from his briefing position. Regardless of whether there was a concession, it is apparent that the Federal Circuit read § 20.700(b) and did not think it clearly imposed an attendance requirement. (Nor do we think the few other regulatory provisions cited by the Secretary bring the clarity that § 20.700(b) does not.[3])

Notwithstanding the clear import of the Federal Circuit's view of the statutory text and the Secretary's regulation, the court stopped short of ruling in Mr. Atilano's favor. But that does not alter our obligation to implement the letter and spirit of the Federal Circuit's mandate. Based on the Federal Circuit's opinion, we conclude that the Secretary cannot condition the right to a hearing, specifically, an appellant's right to elicit testimony from witnesses before the Board, on a claimant's attendance. As applied to Mr. Atilano, we further conclude that the Board erred when it refused to hold the scheduled hearing and permit Mr. Atilano's representative to present expert testimony. Consequently, the Board also erred by requiring Mr. Atilano to demonstrate good cause for his failure to appear at the scheduled hearing with his representative and the expert witness. *See* 38 C.F.R. § 20.702(d) (2017) (current version at 38 C.F.R. § 20.704(d)). Because we cannot surmise how the receipt of live—rather than written—testimony might have affected the Board's assessment of the expert witness's opinion, we cannot conclude that the Board's error was harmless. *See Simmons v. Wilkie*, 30 Vet.App. 267, 279 (2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020).

---

[3] *See* 38 C.F.R. §§ 20.700(d), 20.702(d) (2017).

## II. CONCLUSION

The April 18, 2017, Board decision is VACATED with respect to PTSD and TDIU, and the matters are REMANDED for further proceedings consistent with the opinions of this Court and the Federal Circuit.


TOTH, *Judge,* concurring: The Federal Circuit's decision to remand the case for the parties to relitigate, two years later, the exact same legal issue is—it must be said—head-scratching. Indeed, it so diverges from the customary practice of federal courts that it suggests not only a basic disregard for what de novo review entails but also an indifference to the nature of the authority that higher courts exercise over lower courts. These comments are not mere sour grapes. All judges accept that colleagues higher up the judicial ladder have the final word on legal questions, including calling out errors. But try as I may, I can't understand the Federal Circuit's decision to forgo deciding the legal question before it in favor of sending the case back to this Court with directions about how to interpret various provisions. Lower courts are not marionettes. Because the Federal Circuit's remand dictated the outcome of this case, I feel it necessary, with respect, to break with decorum and comment.

First, de novo review. Standards of review govern how appellate courts approach decisions of lower tribunals, and with very few exceptions, the Federal Circuit reviews all questions from this Court under the de novo standard of review. 38 U.S.C. § 7292. For the purposes of this case, de novo review means essentially this: rather than fixating on purported deficiencies in this Court's decision, the Federal Circuit should have offered its own interpretation of 38 U.S.C. § 7107, and, if it regarded the statute as ambiguous, assessed whether the Secretary's regulations constituted permissible interpretations of the provision or whether such deference was unwarranted.

To be sure, error hunting has a place in appellate review, but it's exclusively a function of the applicable standard of review. Most standards of review are deferential by nature, which means that the reviewing court must affirm the lower court decision unless it can identify a discrete error in the ruling. That's why appellate decisions carried out under a deferential standard of review tend to focus predominantly on how the lower court (or agency) handled a matter—for example, whether a factual finding was clearly erroneous in light of the overall record; whether a district court abused its discretion in rendering an evidentiary ruling at trial; whether an agency's action

was a faithful exercise of delegated authority or was arbitrary and capricious; or (as relevant here) whether an agency's regulation constitutes a permissible interpretation of a statute.

Due to their deferential nature, these standards require reviewing courts to adopt a critical posture and put the underlying ruling through its paces. De novo review is not like this, however. Because the appellate court owes no deference to the lower tribunal, it need not hunt for errors to overrule its decision. In fact, an appellate court can overrule a lower court's perfectly reasonable interpretation of a statute merely because it prefers a different reading as a better expression of congressional intent.

But the freedom de novo review offers comes with a price: hard work. The reviewing court has the responsibility to engage directly with the statute, regulation, or law; decide the legal question; and show its own reasoning. It cannot merely point out a few errors in a lower court opinion, send the case back for a do-over, and call it a day. Instead, the common practice among federal appellate courts is to expend little bandwidth assessing whether a lower court erred on a particular point of statutory interpretation and instead take the matter on directly and analyze it as if no court had ever considered the matter before. *See, e.g.*, *George v. McDonough*, 142 S. Ct. 1953 (2022); *Gallegos v. Principi*, 283 F.3d 1309 (Fed. Cir. 2002).

Which brings me to the rub of the matter: appellate courts remand matters to lower courts when the lower tribunal has authority to perform some action the higher court cannot. So an appellate court can reverse a legal ruling and remand a matter for a lower tribunal to carry out ministerial tasks, or it can remand when there are unresolved issues and the lower tribunal possesses an authority (e.g., fact finding) that the higher court lacks. By contrast, when an appellate court has authority to resolve an issue fully, there's no basis to order a lower court to reconsider a ruling it has already made merely to suggest the ruling come out differently.

The Federal Circuit's remand placed this Court on the horns of a dilemma. We could either suppress our independent judgment to arrive at the conclusion the Federal Circuit all but ordered us to adopt, or we could defy the repudiation of our previous *Chevron* analysis and again affirm in contravention of every signal the Federal Circuit sent. In other words, it proves practically impossible to afford deference under *Chevron* to the Secretary's interpretation while heeding the mandate of a higher court ruling rejecting that position as "inappropriate" and implying, albeit without holding, that deference shouldn't apply at all.

7

"Appellate decisions command compliance, not agreement." *United States v. Microsoft Corp.*, 253 F.3d 34, 118 (D.C. Cir. 2001) (en banc). Our decision here complies with the letter and spirit of the Federal Circuit's rulings in *Atilano II*. But respectfully, I cannot let the unusual nature of the remand in this case pass without comment.